**IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MEANITH HUON,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.:   1: 11-cv-3054** |
| | ) | |
| | ) | |
| | ) | |
| **ABOVETHELAW.COM,   et. a.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## RESPONSE TO THE ABOVE THE LAW DEFENDANTS' MOTION TO DISMISS

Plaintiff, Meanith Huon, in Response to the FRCP 12(b)(6) Motion to Dismiss and

Memorandum of Defendants, Breaking Media, LLC, Breaking Media, Breakingmedia.com,

David Lat, John Lerner, Abovethelaw.com, Elie Mystal ("ATL   Defendants" or "Defendants"),

states as follows:

## ARGUMENT

## I.   THE FAIR REPORTING PRIVILEGE DOES NOT APPLY.

## A.   THE REQUIREMENTS OF THE FAIR REPORT PRIVILEGE ARE NOT MET.

The fair report privilege has two requirements: (1) the report must be of an official

proceeding; and (2) the report must be complete and accurate or a fair abridgement of the official

proceeding. Solaia Technology, LLC v. Specialty Pub. Co., 221 Ill.2d 558, 588 (Ill. 2006).

The ATL Defendants did not report on an official proceedings or make a fair abridgment of the

official proceeding.    Defendants are website operators and bloggers who contend that they

commented on a news article—whose existence on May 6, 2010 Defendants have not

established.    There is no reference to the Belleville News Democrat ("BND") in the article and

1

the link is a broken hyperlink that does not redirect the reader to the BND.   Bloggers cannot

defame someone and, in hindsight, search for news articles or truncated transcripts that

Defendants never read. Defendants can cite to no mainstream news article calling Mr. Huon a

serial rapist.

    *Assuming arguendo* that there was a news article on May 6, 2010, the ATL Defendants

re-published a defamatory statement-- this is not a report of an official proceeding.   It is a

re-publication of a defamatory statement in a news article, which is defamation.   <u>Snitowsky v.</u>

<u>NBC Subsidiary (WMAQ-TV), Inc.</u>, 297 Ill.App.3d 304. 310 (1st Dist. 1988).   Even repeating a

defamatory statement made by a third person is defamation.   <u>Id;</u> Restatement (Second) of Torts

§ 571, Comment c, at 187 (1977).

## B.   DEFENDANTS ARE NOT JOURNALISTS OR REPORTERS.

    Defendants are not reporters or journalists whose conduct are governed by a code of

ethics in news gathering and reporting.   Certain national journalism organizations have

formulated codes of ethics or "canons of journalism."   <u>Conradt v. NBC Universal, Inc.</u>,

536 F.Supp.2d 380, 397 (S.D.N.Y.,2008).    The Court can take judicial notice of the Society of

Professional Journalist Code of Ethics.    http://www.spj.org/ethicscode.asp.   News

organizations like the New York Times and Business Week have a code of ethics.

http://www.nytco.com/press/ethics.html   and http://www.businessweek.com/ethics.htm.   It

would seem that making innuendos and personally attacking Mr. Huon on the world wide web

violates the code of ethics of professional journalism and news reporting.

    The fair report privilege does not extend to the stereotypical "blogger" sitting in his

pajamas at his computer posting on the Internet.   <u>In re Grand Jury Subpoena, Judith Miller</u>, 438

2

F.3d 1141, 1156-1157 (Concurring opinion on privilege not to disclose confidential sources) (D.C. 2006).   Several state laws provide that a reporter's privilege only extends to the established press.   Ala. Code § 12-21-142; Alaska Stat. § 09.25.300; Ariz. Rev. Stat. § 12-2237; Ark. Code Ann. § 16-85-510. Del. Code Ann. tit. 10 § 4320.

One state supreme court has held that the fair reporting privilege in defamation cases does not extend to a self-appointed journalist who blogs on a website.   Too Much Media, LLC v. Hale, 206 N.J. 209   (N.J.,2011).   If that were the case, "anyone with a Facebook account, could try to assert the privilege."   Id at 242.   Bloggers and website operator exhibit none of the recognized characteristics traditionally associated with the news process, nor do website operators demonstrate an established affiliation with any news entity so as to allow it to claim any privileges.   Too Much Media, LLC v. Hale, 413 N.J.Super. 135 (N.J.Super.A.D.,2010), aff'd, 206 N.J. 209 (N.J.,2011).   A blogger merely comments on the writings of others on and creates no independent product of its own nor makes a material substantive contribution to the work of others.   Id

In this case, the ATL Defendants are website operators and bloggers who created a website called "Above The Law" to generate advertising dollars from the traffic, and it generates that traffic by defaming lawyers like Mr. Huon.   This is not reporting news, much less making a report of an official proceeding.   On the date of his acquittal, on May 6, 2010, the ATL Defendants posted a "breaking rape coverage" calling Mr. Huon a serial rapist.   There was no news article hyperlinked calling Mr. Huon a serial rapist–he had been acquitted.   No news article exists calling Mr. Huon a serial rapist.   The ATL Defendants are not the established press governed by ethical cannons of journalism and, thus, are not entitled to the protections afforded

the reporter privilege. The ATL Defendants' unfettered, offensive, and illegal conduct is cyberbulling and cyberstalking under the cloak of reporting.

Public policy outweighs extending the privilege to self-appointed bloggers like Defendants. Why not extend the privilege to someone with a Facebook or Blogger.com account who cyber bullies individuals under the cloak of reporting news? The fact that the ATL Defendants have been successful in generating a lot of money from the web traffic does not make it the established press. It simply puts the ATL Defendants in the same categories as porn sites that profits off the exploitation of other people's misery and degradation. The ATL Defendants fall into the same category of self-proclaimed wannabe "reporters" as the New Nation News a/k/a Newnation.org, a/k/a Newnation.tv–a white supremacist website who reported on Mr. Huon's "Nigger depravity–presented in their own words and actions . . ."

**C. THE PRIVILEGE DOES NOT APPLY TO AN INACCURATE ACCOUNT OF THE PROCEEDINGS.**

In deciding if the fair report privilege applies, the court compares "the official report with the news media account . . . If the defamatory matter does not appear in the official record or proceedings, the privilege of fair and accurate reporting does not apply. Myers v. The Telegraph, 332 Ill.App.3d 917, 922 (5th Dist. 2002). The test is not comparing a blog post with a news story whose existence on May 6, 2010 is in doubt. The test is not comparing a blog post to a truncated trial transcript that Defendants searched for after the fact to cover up its misdeeds. The law does not say that defendants can defame someone first and then find some writing on a scrap of paper later. Lowe v. Rockford Newspaper, Inc. held that the privilege did not apply, because the defamatory statements did not appear in the police report. Lowe, 179 Ill.App.3d 592, 597 (2nd Dist. 1989)

4

In <u>Myers v. The Telegraph</u>, a newspaper story mistakenly reported that a criminal pled guilty to a felony, rather than a misdemeanor. The Fifth Illinois Appellate District–the locale of Mr. Huon's criminal trial–held that the news report was defamatory *per se.* The privilege does not apply if "the defendants published what turned out to be an inaccurate account of the proceedings" In <u>Coursey v. Greater Niles Tp. Pub. Corp</u>, plaintiff was found guilty of 4 out of 5 charges. But the newspaper reported that plaintiff was found guilty of all charges. The Illinois Supreme Court held the newspaper's false reporting was sufficient to overcome the privilege. <u>Coursey</u> ,82 Ill.App.2d 76, 227 N.E.2d 164 (1st Dist. 1967), aff'd, 40 Ill.2d 257, 267 (Ill. 1968).

Mr. Huon alleges that on May 6, 2010, on the day that he was acquitted, the ATL Defendants posted **"breaking rape coverage"** and called Mr. Huon a serial rapist with multiple victims, without stating that Mr. Huon had been acquitted. The further defamatory statements calling Mr. Huon a serial rapist, the claim of multiple victims, the claim of being a talent scout are not reported in the proceedings, like the police report.

### D.   THE STATEMENTS FALLS OUTSIDE THE PRIVILEGE AND IS      DEFAMATORY *PER SE.*

Statements charging a person with unfair business practices, impugning his integrity, prejudicing his practice of law, and/or implying that he committed a crime falls within several of the recognized categories of defamation *per se.*    <u>Solaia Technology, LLC v. Specialty Pub. Co.</u>, 221 Ill.2d 558, 590 (Ill. 2006); <u>Myers</u>, 332 Ill.App.3d at 922; <u>Coursey</u>. 40 Ill.2d. At 267.   These type of defamatory statements are not a fair abridgement of the proceedings and fall outside the privilege. <u>Solaia Technology, LLC,</u> 221 Ill.2d 558 at 590-592.   Here, Defendants charged Mr. Huon of committing fraud by pretending to be a talent scout, a supervisor for a company that

sells alcohol, a promoter seeking promotional models—all three statements are inherently conflicting. Worse, the ATL Defendants accused Mr. Huon of raping multiple women in **"breaking rape coverage"**, of being a cyberstalker, and of being serial criminal, hyperlinking the post to defamatory statements from Lawyergossip.com.

## E. THE DEFAMATORY POST WAS NOT A FAIR SUMMARY OF ANY PROCEEDINGS.

For the privilege to apply, a new media's summary must be "fair" for the privilege to apply. A fair abridgment means that the report must convey to readers "a substantially correct account." Restatement (Second) of Torts § 611, Comment f, at 300 (1977). Comment f of the second Restatement states:

> "[I]t is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it * * *. The reporter is not privileged under this Section to make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to any one, nor to indict expressly or by innuendo the veracity or integrity of any of the parties." Restatement (Second) of Torts § 611, Comment f, at 300-01 (1977).

Solaia Technology, LLC, 221 Ill.2d at 589-590.

In this case, the ATL Defendants omitted significant facts, invented numerous fiction, conveyed erroneous impressions to its readers, and imputed deviant motives to Mr. Huon. Never even considering that a woman cannot hurl herself out of a car traveling at highway speed without sustaining fatal death, Defendants attacked the veracity and integrity of Mr. Huon: "**So we're not denying that she hurled herself out of a moving vehicle, we're contending she jumped out of the car to make it look like she was raped? Right, sure. That sounds like the definition of incredible.**"

## F. THE PRIVILEGED DOES NOT APPLY TO FABRICATED EVIDENCE.

6

The privilege does not permit the expansion of the official report by the addition of fabricated evidence designed to improve the credibility of the defamation. Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc., 297 Ill.App.3d 314, 310 (1st Dist. 1988). In Snitowsky, NBC reported that a school principal charged one of the teachers who worked at her school with criminal misconduct. The news media provided none of the background needed for the audience doubt the principal's accusations, making no reference to prior disagreements between the principal and the teacher. Snitowsky held that without further context, the audience has no basis to conclude that the principal had ulterior motives for lying and, thus, the statements were defamation *per se.* Snitowsky held that the fair report privilege did not protect NBC, because the news media did not simply abridge the statements made to police but reported evidence not found in the report. NBC reported that a security guard witnessed the beating, although the police report never mentioned a witness. By inventing facts beyond the official report to make the charges more credible, NBC abandoned the fair report privilege.

In this case, the ATL Defendants abandoned any fair report privilege when it invented facts not found in the police report that—among other lies--there were other alleged rape victims and that Mr. Huon was a serial rapist. Defendants posted "breaking rape coverage" on the day of Mr. Huon's acquittal, without mentioning that Mr. Huon was acquitted. The ATL Defendants invented facts beyond any official report:

> **-breaking rape coverage.**
> **-any alleged attorney rapists near you .**
> **-the files of the wanton and depraved**
> **- A St. Louis-area lawyer came up with an excellent little game to meet women.**
> **-Meanith Huon allegedly listed Craigslist ads where he claimed to be a talent scout**
> **for models.**
> **-But Huon's potentially harmless lies allegedly turn dastardly, pretty quickly:**
> **-Had the victim Google Huon, she  would have found stories like this from the**
> **Madison County Record:**

7

**-Or she might have come across this link from, at Lawyer Gossip:**

**-Of course, women shouldn't have to assume that every guy they meet is a potential rapist.**

**-But apparently there are a lot of depraved dude walking around that are potential rapist.**

**-This is gonna end badly.**

**-Oh, come on.   If somebody was driving and tried to "force" me to perform oral sex on them, I'd just get out of the stupid car.   Which is to say, I'd do exactly what the victim did in this case.**

**-Damn.   If you can't get a woman to consensually stay in a moving vehicle, can you really get her to consensually agree to sex (insofar as lying to her about your job and your intentions to get her into the car counts as consensual in the first place)?**

**-Obviously, Huon sees things differently.**

**-So we're not denying that she hurled herself out of a moving vehicle, we're contending she jumped out of the car to make it look like she was raped? Right, sure.   That sounds like the definition of incredible.**

**-It seems to me that there is entirely too much (alleged) raping going on in this country.**

**-If this keeps up, men and women are going to have to start carrying around sexual consent forms on their persons.**

**-I, the undersigned, being of sound mind and hot body, do hereby consent to affixing my _____ to the other party's_____. Such amorous undulations include, but are not limited to, _____, _____, and all proposals will be considered so long as no animals (barnyard    or otherwise) are involved.**

**I claim no rights to future_____,_____,or_____, in exchange for this brief interruption in my chronic loneliness.**

Making things worse, the ATL Defendants wrote about a 15 year old girl being raped

immediately prior to the post about Mr. Huon posing as a talent scout to rape bubblegum

princesses.   Defendants made no mention that the complaining witness was 26 years old.


## II.   THE COURT SHOULD NOT CONSIDER THE TRUNCATED TRANSCRIPT OF OPENING ARGUMENTS FROM MAY 4, 2010 OR THE SO-CALLED NEWS ARTICLE.

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

court must presume all of the well-pleaded allegations of the complaint to be true. Miree v.

DeKalb County, Georgia, 433 U.S. 25, 27(1977).   In addition, the court must view those

allegations in the light most favorable to the plaintiff. Gomez v. Illinois State Board of Education, 811 F.2d 1030, 1039 (7th Cir.1987).   The ATL Defendants   makes the bare assertion that its defamatory blog post   was a commentary on a news article from the Belleville News-Democrat ("BND"), without presenting any evidence that the BND article exists or was hyperlinked on the date in question.     The Court cannot rely on mere assertions of conclusions by the ATL Defendants in ruling on FRCP 12(b)(6) motion.   Mr. Huon alleges that the defamatory post was published on the day Mr. Huon was acquitted on May 6, 2010–not May 4, 2010.    The BND is not mentioned anywhere within the four corners of the post.   The BND hyperlink is broken.   The ATL Defendants do not report that the BND removed their defamatory posts, after Mr. Huon advised them of the false statements that the BND posted.

The ATL Defendants cannot rely on the truncated transcripts of opening statements on May 4, 2010–opening statement is not evidence.     Mr. Huon alleges that the defamatory statement was published on May 6, 2010 and does not convey to the readers a substantially correct account, i.e. the consent defense was barred on May 6, 2010.   Conveniently, the ATL Defendants have selected truncated portions of the transcript, even though counsel for the ATL Defendants has admitted that she has the entire trial transcript.   By refusing to produce the entire trial transcript and by not offering admissible evidence that Defendants even looked at the transcript before defaming Mr. Huon, Defendants have failed to meet their burden that the privilege applies.

Defendants' reliance on opening arguments–in hindsight–is no defense.   In Von Kahl v. Bureau of Nat. Affairs, Inc., --- F.Supp.2d ----, 2011 WL 4032384 (D.C.,2011), plaintiff sued the Bureau of National Affairs, Inc. ("BNA") alleging that BNA defamed him in summaries

published about a petition he filed following his criminal prosecution. BNA produced a truncated transcript attributing the source of the statements to be arguments of the prosecutor. The District Court held that the fair reporting privilege did not apply, because BNA never made clear that the prosecutor made the statements and treated the prosecutor's arguments as if the Court made findings of facts. In this case, opening statements are not evidence. Attempting to cover up their defamatory conduct, Defendants just dig a deeper hole for themselves.

Opening argument is not evidence. <u>People v. King</u>, 109 Ill.2d 514 (Ill. 1986). The purpose of the opening statement is to advise the jury what the evidence will show. <u>People v. King</u>, 109 Ill.2d at 535. Accordingly, reversible error may occur when the prosecution asserts in the opening statement facts or propositions on which no evidence later is presented. <u>Id.</u>

Defendants' reliance on the self-serving statements of the complaining witness after the fact of the posting is not a defense. Defendants never reported that the complaining witness had a motive for lying and was impeached on numerous occasions by Mr. Huon's attorney. By treating the complaining witness's self-serving statements as undisputed facts, Defendants invented facts and added to what actually took place at the judicial proceedings.

The ATL Defendants argue that the court can take judicial notice of the truncated transcript, because documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. However, the truncated trial transcript from May 4, 2010 are neither referred to in Mr. Huon's complaint nor central to his claim for defamation. <u>Russo v. Palmer</u> 990 F.Supp. 1047, (N.D.Ill.,1998). The truncated trial transcript doesn't call Mr. Huon a serial rapist and does not refer to multiple victims.

10

Defendants' chart is an improper attempt to decide questions of fact, before Mr. Huon has even been afforded an opportunity to conduct discovery and when the ATL Defendants have refused to produce the entire trial transcript.   Cook v. Winfrey, cited by the Defendants, held that the District Court should not resolve factual on a motion to dismiss under Rule 12(b)(6)." 141 F.3d 322, 330-31 (7th Cir. 1998).   Defendants' request to convert the motion to summary judgment motion under FRCP 12(d) should be denied, since under  FRCP 12(d), "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Mr. Huon has not been given reasonable opportunity to conduct discovery as to all the materials pertinent.

Defendants have the burden of proving that the privilege applies.   Lowe v. Rockford Newspaper, Inc., 179 Ill.App.3d 592   (2nd Dist. 1989).   Defendants have failed to meet the burden by engaging in gamesmanship and not producing the entire trial transcript, the police report, the written statements of the complaining witness–namely, the entire official proceedings.

## III.   IT IS A QUESTION OF FACT FOR A JURY HAS TO WHETHER THE PRIVILEGE HAS BEEN ABUSED.

Both the Seventh Circuit and Illinois courts have held that it is question of fact for a jury as to whether the fair reporting privilege was abused.   Brown & Williamson Tobacco Corp. v. Jacobson, 713 F.2d 262, 272 (7th Cir. 1983); Maple Lanes, Inc. v. News Media Corp., 322 Ill.App.3d 842 (2nd Dist. 2011) ( genuine issue of material fact as to whether newspaper correctly quoted sheriff).   As the 7th Circuit stated, "If you embellish a defamatory statement with accusations you know to be false, taken from ancient government reports that have no claim to contemporary credence, your repetition of those stale accusations is not privileged".   "  Brown

& Williamson Tobacco Corp. v. Jacobson, 713 F.2d 262, 272 (7th Cir. 1983).    In Brown &
Williamson Tobacco Corp., plaintiff sued CBS and a reporter over a broadcast on cigarette
advertising strategy.    Defendants argued that the libel was privileged as a fair and accurate
summary of the Federal Trade Commission staff's report on cigarette advertising.    The Seventh
Circuit held that "this is a question of fact" and that "the question is whether this would save the
defamation count if the jury found that the broadcast was a fair summary after all."   713 F.2d at
271-273.

     In explaining its holding, the Seventh Circuit further held that, "The truth is that Illinois
law is in disarray on the question whether actual malice defeats the privilege of fair summary."
Brown & Williamson Tobacco Corp. v. Jacobson, 713 F.2d at 272.    The Seventh Circuit stated
that express malice will defeat the privilege: the privilege is forfeited if the summary is made
solely for the purpose of causing harm to the person defamed.    Lulay v. Peoria Journal-Star,
Inc.,   34 Ill.2d 112, 115, 214 N.E.2d 746, 748 (1966); Restatement of Torts § 611(b) (1938);
Brown & Williamson Tobacco Corp., 713 F.2d at 272 .   However, the Illinois Supreme Court
has left open the question as to whether actual malice will defeat the privilege.   Id.   Contrary to
the contention of the ATL Defendants,   Illinois appellate courts disagree as to whether the fair
report privilege can be overcome--the Illinois Supreme Court has not addressed this issue.   Gist
v. Macon County Sheriff's Dep't, 284 Ill.App.3d 367, 373, 671 N.E.2d 1154, 1161 (4th
Dist.1996); Wilkow v. Forbes, Inc. 2000 WL 631344 (N.D.Ill.,2000) , aff'd, 241 F.3d 552 (7th
Cir. 2001).   Thus, assuming arguendo that the privilege applies, it is a question of fact for the
jury as to whether the privilege has been abused.

     Defendants' own cited case, Cook v. Winfrey, held that the District Court committed

12

reversible error by dismissing plaintiff's defamation claim on the grounds that the statements were privileged under Ohio law, because "the conclusion that the privilege applied to the allegedly defamatory statements in this case required the district court to resolve factual issues that should not be reached on a motion to dismiss under Rule 12(b)(6)." 141 F.3d 322, 330-31 (7th Cir. 1998).

### IV. THE POST IS DEFAMATORY *PER SE.*

As previously discussed above, statements impugning a person's integrity, prejudicing his practice of law, and/or implying that he committed a crime is defamatory *per se*. Solaia Technology, LLC , 221 Ill.2d at 590; Myers, 332 Ill.App.3d at 922; Coursey v. Greater Niles Tp. Pub. Corp., 40 Ill.2d 257 at 239. On the date that Mr. Huon was acquitted of rape, the ATL Defendants posted a "breaking rape coverage" story that Mr. Huon, a wanton and depraved individual, posed as a talent scout and forced a woman to perform oral sex and that there were other female victims. Before the Huon story, Defendants wrote about a 15 year old girl being raped. Then the ATL Defendants wrote that the next story—the Huon story—was about the "wanton and the depraved". What could be more wanton and depraved than raping a 15 year old girl? Defendants than compare Mr. Huon's "victim" to a "bubblegum princess". Defendants imputed that Mr. Huon committed a crime, that he lacks integrity by lying, that he fornicates with several women, that he is an "attorney rapists near you", that he is a pedophile who preys bubblegum princesses. As the ATL Defendants admit, this would fall into all the categories of defamation *per se*: "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment

13

duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication." Solaia, 221 Ill. 2d at 579-80. The hyperlinks to the defamatory statements of the Madison Record and Lawyergossip.com were republication of additional defamatory statements, making the lies about Mr. Huon even more outrageous.

Mischaracterizing paragraph 24(a) of the Second Amended Complaint, the ATL Defendants argue that Mr. Huon's sole claim is that it was inaccurate to state that the charges stemmed from more than one woman. This is incorrect. The ATL Defendants is in no position to speak for Mr. Huon, having represented him to be a depraved and wanton child rapist and making a profit generated by the advertising dollars and the web traffic. What about paragraphs (b) through (l)? Paragraph 24(a) through (l) state 12 facts that the Defendants omitted from the story. Paragraph 25(a) through (aa) then state 27 facts that Defendants simply invented in the story. See attached Exhibit "A".

Defendants' cases do not apply. In Hahn v Konstanty 257 A.D.2d 799, (N.Y.A.D. 3 Dept.,1999), a New York appellate court decision from 1999, a newspaper published that plaintiff was charged with disorderly conduct but that the charges were dismissed on certain conditions. The defamatory statement was that there were no conditions of the dismissal. In this case, Mr. Huon was acquitted and on the date that he was acquitted, Defendants posted a "breaking rape coverage" that implied he was a rapist of multiple women and con artist who lured women with lies and placed the Huon story next to the story of a child rapist and compared Mr. Huon's victim to a bubblegum princess. Myers v. The Telegraph, 332 Ill.App.3d 917, 922 (5th Dist. 2002)–decided in the same locale Mr. Huon's criminal case –is on point (newspaper

mistakenly reporting that a criminal pled guilty to a felony, rather than a misdemeanor, was

defamatory *per se).*     In this case, the ATL Defendants implied Mr. Huon had raped several

women and made the following defamatory statements, on the day of his acquittal:

> **-breaking rape coverage.**
> **-any alleged attorney rapists near you .**
> **-the files of the wanton and depraved**
> **- A St. Louis-area lawyer came up with an excellent little game to meet women.**
> **-Meanith Huon allegedly listed Craigslist ads where he claimed to be a talent scout**
> **     for models.**
> **-But Huon's potentially harmless lies allegedly turn dastardly, pretty quickly:**
> **-Had the victim Google Huon, she  would have found stories like this from the** . . .
>
> **-. . .Oh, come on.   If somebody was driving and tried to "force" me to perform oral**
> **sex on them, I'd just get out of the stupid car.   Which is to say, I'd do exactly what**
> **the victim did in this case.**
> **-Damn.   If you can't get a woman to consensually stay in a moving vehicle, can you**
> **really get her to consensually agree to sex (insofar as lying to her about your job and**
> **your intentions to get her into the car counts as consensual in the first place)?**
> **-Obviously, Huon sees things differently . . .**
>
> **- . . . It seems to me that there is entirely too much (alleged) raping going on in this**
> **country.**

It is well established that it is defamatory to call or imply that someone is a "rapist".     As the

U.S. Supreme Court stated, No one will deny "that it is libelous falsely to charge another with

being a rapist".   Beauharnais v. People of State of Ill., 343 U.S. 250, 72 S.Ct. 725 U.S. (1952);

Cooper v. Dupnik 924 F.2d 1520 (9th Cir. 1991); In re Thompson, 162 B.R. 748

(E.D.Mich.,1993).    The facts here are more egregious: Mr. Huon was called a rapist after he

was acquitted by a jury of his peers.     Because Mr. Huon has alleged defamation *per se*, he does

not have to allege special damages. Regarding his defamation *per quod* count, Mr. Huon should

be given leave to amend his complaint to allege special damages.   Van Vliet v. Cole Taylor ,

2011 WL 148059 (N.D.Ill.,2011).

**V.     THS U.S. SUPREME COURT AND THE ILLINOIS SUPREME COURT HAVE REJECTED THE ARGUMENTS ADVANCED BY DEFENDANTS THAT OPINIONS ARE NOT ACTIONABLE**.

The U.S. Supreme Court and the Illinois Supreme Court have rejected the argument that opinions are not actionable under the First Amendment.   First, there are no First Amendment considerations in this case. Milkovich v. Lorain Journal Co. held that First Amendment and Constitutional limits on state defamation law are considerations in cases involving a public figure or official or where the speech at issue is of public concern. 497 U.S. 1, 13-15   (1990);  Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc., 227 Ill. 2d 381, 394 (Ill. 2008).    In this case, Mr. Huon is neither a public figure nor official, the defamatory statement is not of public concern, and defendants are not media defendants but bloggers and website owners.

*Assuming arguendo,* that First Amendment issues come into play, the U.S. Supreme Court in Milkovich and the Illinois Supreme Court in Bryson have rejected the argument that expressions of opinions are not defamatory.      Bryson v. News America Publication, 174 Ill. 2d 77 (Ill. 1996).   As the U.S. Supreme Court explained, there is no additional First Amendment protection of opinion, because "it would ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact."   Milkovich, 497 U.S. at 18.   The U.S. Supreme Court held that it will not create an artificial dichotomy between "opinion" and "fact". Milkovich, 497 U.S. at 18-19.   "[T]he test to determine whether a defamatory statement is constitutionally protected is a restrictive one".   Bryson, 174 Ill. 2d at 99-100.   A statement is constitutionally protected under the first amendment only if it cannot be "reasonably interpreted as stating actual facts." Bryson, 174 Ill. 2d at 100; Milkovich, 497 U.S. at 20.   Whether the statement is actually true or false, however, is a question of fact for the jury.   Simply because the story is labeled "fiction"

and, therefore, does not purport to describe any real person" does not mean that it may not be defamatory *per se.*   Muzikowski v. Paramount Pictures Corp., 322 F.3d 918 (7th Cir. 2003).

In Bryson v. News America Publication , the Illinois Supreme Court held that a fictional story in Seventeen magazine calling the plaintiff a "slut" was an assertion of fact, because the clear impact of the statement was that plaintiff was, in fact, sexually promiscuous. This was not the sort of loose, figurative or hyperbolic language that would negate the impression that the writer was seriously maintaining that the character depicted in the story was unchaste. The assertion is sufficiently factual to be susceptible to being proven true or false and, thus, not protected under the First Amendment.

Throughout it brief, the ATL Defendants exaggerate its contention by making sweeping generalizations but citing to only one instance that do not support the generalization.    Arguing the post is an opinion, the ATL Defendants' cite the statements calling Mr. Huon "wanton and depraved" for coming up with a game of meeting and raping women and that "Huon's potentially harmless lies allegedly turned dastardly, pretty quickly".   These statements   are assertions of fact that are susceptible to being proven true or false.      Mr. Huon can prove as true or false the alleged assertions that he came up with a game, that he met multiple women, that he rape several women, that he raped anyone at all, that he is wanton or depraved.   These are assertions of fact.

**VI.    THE ILLINOIS SUPREME COURT HAS ALREADY REJECTED SIMILAR STRAINED ATTEMPTS BY DEFENDANTS TO FIND UNNATURAL BUT INNOCENT MEANINGS.**

The ATL Defendants argue in a fragmented and disjointed manner that if you remove each sentence from the post and chart and graph it, then you can find an unnatural but innocent meaning, citing to an incomprehensible chart that the Defendants have created.   Why not

remove each word from the post?    Why not move the sentences and words around? Why not

remove each letter of the word and rearranged them and read them backward?   The law requires

that the defamatory statements be read in the context the statements were posted.   Without a

context, any series of words would have an unnatural but innocent meaning.

The Illinois Supreme Court in <u>Chapski v. Copley Press</u>, warned against the lower courts

"generally strain[ing] to find unnatural but possibly innocent meanings of words where such

construction is clearly unreasonable and a defamatory meaning is more probable"  <u>Chapski v.</u>

<u>Copley Press,</u> 92 Ill. 2d 350-352, (1982);   <u>Tuite v. Corbitt</u>, 224 Ill. 2d 490, 503 (Ill. 2007).   For

this reason, the Illinois Supreme Court   modified the innocent construction rule.   <u>Tuite v.</u>

<u>Corbitt</u>, 224 Ill. 2d 490, 503 (Ill. 2007).    The innocent construction rule, as modified, is as

follows:

> A written or oral statement is to be considered in context, with the words and the
> implications therefrom given their natural and obvious meaning; if, as so construed, the
> statement may reasonably be innocently interpreted or reasonably be interpreted as
> referring to someone other than the plaintiff it cannot be actionable *per se.*   <u>Tuite,</u> 224
> Ill. 2d at 503.

"[O]nly *reasonable* innocent constructions will remove an allegedly defamatory statement from

the *per se* category."  <u>Tuite,</u> 224 Ill. 2d at 504; <u>Bryson,</u> 174 Ill. 2d at 90.    Lifting sentences out

of their context and charting them creates unreasonable and unnatural meanings.

The innocent construction rule does not require courts to strain to find an unnatural

innocent meaning for a statement when a defamatory meaning is far more reasonable.   <u>Tuite,</u>

224 Ill. 2d at 505.   In applying the rule, courts must give the alleged defamatory words their

natural and obvious meaning.   <u>Id.</u>   Courts must interpret the alleged defamatory words as they

appeared to have been used and according to the idea they were intended to convey to the

reasonable reader.     Id.     In Tuite, defendant wrote a story on organized crime, stating that

after plaintiff, a defense lawyer, was retained to represent mob figures, the mob figures believed

they were all going to be acquitted.    Plaintiff sued defendants alleging that the statements were

defamatory because the clear message was that plaintiff was expected to engage in bribery to

secure an acquittal.     Defendants argued that the statements were capable of an innocent

construction to the extent that plaintiff was retained for his legal skills.    The Illinois Supreme

Court disagreed and held that the clear message of the statements were that plaintiff was

expected to fix the case.    The Court re-emphasized that the context of the statement is critical in

determining its meaning.     The Court said the disputed statements must be viewed in the context

of the corruption described in the entire book.     The Court concluded that given the

overwhelming focus on corruption in the book, the statements could not reasonably be given an

innocent construction.

        In this case, Defendants first argue that many of the statements are not defamatory citing

the single statement that Mr. Huon is a St. Louis lawyer.    Defendants miss the point: Mr. Huon

contends that Defendants invented fiction and passed them off as facts.    He cites an example in

which Defendants called him a St. Louis lawyer when he was an Edward Jones financial advisor

in 2008 who was trained and required by Edward Jones to door knock 100 homes and businesses

a day to build a book a business.    In the same post, the ATL Defendants falsely write that Mr.

Huon posed as a talent scout, a supervisor for a company that sells alcohol , and someone

seeking promotional models.    How can Mr. Huon pose as three different people with three

different jobs to the same complainant?    The statements in the post contradict themselves and

are inherently fabricated.

Second, citing <u>Barry Harlem Corp. v. Kraff</u>, 273 Ill. App. 3d 388, 391-92 (1st Dist. 1995), the ATL Defendants continue to make sweeping generalizations that many of the statements are not about Mr. Huon, by pointing to a single instance to   the statement about "pretend[ing]" to be a "talent scout" or an "an Ostrich rancher from sub-Saharan Africa" to meet "bubble gum princesses".   On the contrary, the entire story is about Mr. Huon pretending to be a talent scout to rape girls.   The post does not identify the ages of these girls other than a comparison to ""bubble gum princesses".   As the trial transcript of the *voire dire* in the criminal case on May 4, 2010 would show–which the ATL Defendants conveniently edited out--potential jurors, including one who would become the foreman, thought that the alleged complaining witness was a minor because her name was withheld.   In the post, the ATL   Defendants makes it more likely for the confusion to happen by comparing the alleged victim to "bubble gum princesses"–a clear reference to underage girls when the complaining witness in fact was a 26 year old woman.   The entire article is about rape stories of little girl. The first story is about a 15 year old girl being raped.   The next story is from the "wanton and depraved" file.   What can be more "wanton and depraved" than raping a 15 year old?   Raping a 26 year old?   No.   Lying and luring a bubblegum princess to be raped.   That is more wanton and depraved.   The clear import of the post defames Mr. Huon as a "wanton and depraved" pedophile.    The Illinois Supreme Court has refused to extend the holding in <u>Barry Harlem Corp. v. Kraff, Bryson v. News America Publications, Inc</u>., 174 Ill.2d 77 (Ill. Oct 24, 1996) (fictional character refers to plaintiff).    It is not seriously disputed that the post is about Mr. Huon and that Defendants called Mr. Huon an "attorney rapists".    Within the article, Defendant Elie Mystal, compares the so-called rape victims of Mr. Huon with   "bubble gum princesses".   He compares pretending to

20

be an ostrich rancher to false allegations that Mr. Huon posed as a talent scout.   This is not

self-deprecating humor because Mr. Mystal does not call himself a serial rapist.    The only

person being belittled or defamed is Mr. Huon.   Furthermore, it is a question of fact for the jury

as to whether or not the statement was in fact understood to be defamatory or to refer to the

plaintiff.    Tuite, 224 Ill. 2d at 503.

  Third, the ATL Defendants broadly claim that "many of Plaintiff's allegations do not

accurately reflect the statements in the Post" by pointing to a single instance where "the Post

describes the testimony of Plaintiff's alleged victim."    However, the repetition of an imputation

made by a third person is actionable although the defamer attributes the charge to a third person.

Restatement (Second) of Torts § 571, Comment c, at 187 (1977).   (Calling the complainant Mr.

Huon's victim on the date of his acquittal is defamatory.   Gooch v. Maryland Mechanical

Systems, Inc., 81 Md.App. 376 (Md.App.,1990)).   The ATL Defendants omit facts from the

official proceeding that cast doubt on the complaining witness, who was impeached numerous

times during cross-examination—lying about Mr. Huon automatically locking her window in the

car when photographs showed Mr. Huon's car did not have power windows.

  The use of the chart is improper, because it lifts sentences and words out of their natural

meaning in the context that they were used.   Moreover, Mr. Huon shouldn't have to go through

6 pages of a fragmented and disjointed   chart consisting of 40 lines and 8 columns of

permutations to try to decipher the ATL Defendants' incoherent arguments.   Defendants have

the burden to write a cogent motion to dismiss, not fragments from Ludwig Wittgenstein's

Philosophical Investigations or like lines of Wallace Stevens' poetry.

## VII.   MR. HUON HAS STATED A CLAIM FOR FALSE LIGHT.

The ATL Defendants do not give a cogent argument for the dismissal of Mr. Huon's false light claims but merely adopts the argument the Defendants made regarding Mr. Huon's defamation claims.   Thus, as the movant, Defendants have not met its burden.   Mr. Huon adopts his response to Defendants' arguments for this section.     To prove malice, Mr. Huon must show that the publicity at issue is "of and concerning" him, that it placed him before the public in a false light, and that there was actual malice.   Muzikowski v. Paramount Pictures Corp., 322 F.3d 918 (7th Cir. 2003).     Mr. Huon has alleged that the ATL Defendants posted a defamatory post calling him a depraved and wanton attorney rapist who came up with a game to rape several women, that Defendants knew that these statements were false, and that Defendants acted with malice.

## VIII.    MR. HUON HAS STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

Contrary to the assertions of the Defendants, several cases around the country have held that the publication of a defamatory statement constitute extreme and outrageous conduct. Kolegas v. Heftel Broadcasting Corp., 154 Ill.2d 1, (Ill.,1992); Hatfill v. New York Times Co., 416 F.3d 320 (4th Cir. 2005); Russell v. Thomson Newspapers, Inc., 842 P.2d 896 (Utah,1992); Moss v. Wallace, 2009 WL 4683553 (Conn.Super.,2009).     Perhaps, we can start with the Illinois Supreme Court: in Kolegas v. Heftel Broadcasting Corp., defendants, radio disc jockeys, made defamatory statements about the plaintiff, who was organizing a festival to benefit neurofibromatosis, a serious neurological disorder, which is commonly known as Elephant Man

22

disease.   Defendants stated on the air that plaintiff was "not for real", that plaintiff   was just

"scamming" them, that there was "no such show as the classic cartoon festival".   The Illinois

Supreme Court held that these statements supported a claim for extreme and outrageous conduct,

because defendants "had access to channels of communication" and "the power of the media

cannot be denied.   More importantly, the plaintiffs had no similar access to the public . . ."

Kolegas v. Heftel Broadcasting Corp.,154 Ill.2d at 22.

    In this case, the facts are more egregious.   Mr. Huon had been wrongfully been

prosecuted by Madison County and was exonerated.    On the date of his acquittal, Defendants

called Mr. Huon a scammer who lies to lure little girls and women to meet him, depraved and

wanton, an attorney rapist, someone posing as a talent scout, a predator of bubble-gum princess,

someone who came up with a game to meet women that turned dastardly, more wanton and

depraved than a rapist of a 15 year old girl.    The ATL Defendants use the power of the world

wide web to gain access to more channels of communications than Mr. Huon, because

Defendants have access to the thousands, if not millions, of potential readers.   The

Abovethelaw.com site is ranked no. 1 for law blogs.   http://www.invesp.com/blog-rank/Law.

Mr. Huon has no similar access, much less a forum to rebut the outrageous conduct.   Out of 30

million websites, Abovethelaw.com ranks no. 6,379 in the US.

http://www.alexa.com/siteinfo/abovethelaw.com#.

    Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 108 S.Ct. 876 (U.S.Va.,1988), cited by

the ATL Defendants, do not apply, because Mr. Huon is a public figure and, thus, there are no

First Amendment implications in this case.    In addition, the U.S. Supreme Court stated in

Hustler Magazine, Inc. v. Falwell,

    Of course, this does not mean that any speech about a public figure is immune from

23

sanction in the form of damages. Since <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), we have consistently ruled that a public figure may hold a speaker liable for the damage to reputation caused by publication of a defamatory falsehood, but only if the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  <u>Hustler Magazine, Inc. v. Falwell,</u> 485 U.S. 46, 52 (U.S.Va.,1988).

Second, <u>Hustler Magazine </u>has been called into  doubt. <u>Bryson,</u> 174 Ill.2d 77 (Ill. 1996).    Since 1990, federal courts apply <u>Milkovich v. Lorain Journal Co. </u>(1990), 497 U.S. 1, in determining whether speech in defamation actions is privileged.     <u>Herring v. Adkins</u>, 150 Ohio Misc.2d 13, 19-20 902 (Ohio Com.Pl.,2008).   In Milkovich, the Supreme Court determined that the threshold question is not whether the statement can be labeled as an opinion, but is instead whether a reasonable fact-finder could conclude that the statement implies an assertion of an objective fact.   <u>Id.</u>

The ATL Defendants' remaining cases hold that plaintiff's state a cause of action for defamation and false light.   <u>Berkos v. National Broadcasting Co., Inc.,</u>161 Ill.App.3d 476, (1st Dist.,1987), cited by Defendants, held that a judge stated a cause of action for defamation and false light against NBC for identifying him as involved in judicial corruption under investigation in Operation Greylord.   In this case, on the date that he was acquitted, Defendants falsely identified or implied that   Mr. Huon was under investigation for being a serial rapist and engaging in wanton and depraved behavior.   Defendants' reliance on <u>Berkos </u>is tantamount to conceding that Mr. Huon states a cause of action for defamation and false light.

## IX.   THE COURT SHOULD ALLOW A PRIVATE CAUSE OF ACTION FOR CYBERBULLYING AND/OR CYBERSTALKING.

The problems of cyberstalking and cyberbullying by bloggers and the media is a serious threat to Americans.    Many states have enacted "cyberstalking", "cyberbullying", or

"cyberharassment" laws.http://www.ncsl.org/default.aspx?tabid=13495.    Addressing the American Psychological Association's ("APA") Annual Convention, Dr. Elizabeth Carll, of the APA Media Psychology Division, stated: "It is my observation that the symptoms related to cyberstalking and e-harassment may be more intense than in-person harassment, as the impact is more devastating due to the 24/7 nature of online communication, inability to escape to a safe place, and global access of the information.

http://www.telegraph.co.uk/technology/internet/8687956/Cyberstalking-more-dangerous-than-traditional-bullying.html.

Recent scandals in news involving the Fox News Corporation phone hacking incidents show that even the established press have used technology to engage in illegal activities to stalk its subject.

http://www.csmonitor.com/USA/2011/0716/Rupert-Murdoch-phone-hacking-scandal-US-connections-grow.

Social media encourages and accelerates abuses by cyber bullies and cyberstalkers who cloak themselves as bloggers and "wannabe" journalists.   Social media, bloggers, website operators have given birth to a new crime that people are more at risk for–cyberstalking and cyberbulling.

http://www.thisisnorthdevon.co.uk/Police-warn-cyber-stalking-risk-social-network/story-13919196-detail/story.html.

The criminal statutes are not adequate to protect Americans from the threat of cyberbullying and cyberstalking, because of the ever changing nature of technology and the vast expanse of the world wide web.

http://www.law.illinois.edu/bljournal/post/2008/04/22/Cyberbullying-A-Modern-Problem.aspx.
Private enforcement of cybercrime is needed.

http://www-bcf.usc.edu/~idjlaw/PDF/11-1/11-1%20Rustad.pdf.   A blogger with a website
hosted in the Netherlands, for all practical purposes, would be out of the reach of the jurisdiction
of the Illinois criminal courts.

   When a statute is enacted to protect a particular class of individuals, courts may imply a
private cause of action for a violation of that statute although no express remedy had been
provided.   Sawyer Realty Group, Inc. v. Jarvis Corp., 89 Ill.2d 379, 386 (Ill. 1982).   This
standard evolved from a test first articulated in Cort v. Ash (1975), 422 U.S. 66, 78, where the
Supreme Court examined four factors: (1) Is the plaintiff one of a class for whose especial
benefit the statute was enacted? (2) Is there any indication of legislative intent to create or deny
such a remedy? (3) Is it consistent with the underlying purpose of the legislative scheme to imply
such a remedy? (4) Is the cause of action traditionally allocated to State law? Sawyer Realty
Group, Inc. v. Jarvis Corp., 89 Ill.2d 379, 386 (Ill. 1982).   Illinois courts have continually
demonstrated a willingness to imply a private remedy, where there exists a clear need to
effectuate the purpose of an act.   Id.

   Mr. Huon's case is a classic of example of why the criminal statutes are ineffective for
enforcement against cyberstalking and why the ATL Defendants are not reporters.   The
Madison County prosecutors used the Illinois cyberstalking statute in 2009 CF 1688 to retaliate
against Mr. Huon for demanding a trial in 2008 CF 1496.    The allegation was that the
complaining witness Googled Mr. Huon and read a blog with no reference to the complaining
witness name.   The blog postings allegedly included a "wide variety of professions of love,

along with religious references", including "10 reasons why I'd make a good husband for you." The alleged post made no reference to the complaining witness by her legal name. Madison County prosecutors contended that if a complaining witness comes across a website that makes no reference to that person and if the words of that website causes the person to experience subjective emotional distress–no matter how harmless the words are, that constitutes cyberstalking. Madison County prosecutors overcharged Mr. Huon with meritless charges, in the hopes that either he would be convicted of something or his funds would run out.

The ATL Defendants knew about the false cyberstalking charges because they posted a defamatory comment about it with a hyperlink to the Lawgossip.com website. However, rather than engaging in investigative journalism to explore the possibility that anyone who creates website content that someone finds distressful can be charged with cyberstalking in Illinois –much less even report to the world of the prosecutorial misconduct–the ATL Defendants proceeded to engage in the same conduct that the Madison County prosecutors called cyberstalking.

The Illinois cyberstalking statute criminalizes "a course of conduct using electronic communication directed at a specific person" when the actor "knows or should know that [it] would cause a reasonable person to. . . or (2) suffer other emotional distress. The ATL Defendants on at least two occasions, in 2008 and 2010, posted statements regarding Mr. Huon that caused him to experience distress. The facts here are even more egregious than what Mr. Huon was charged with by Madison County prosecutors. In 2008, the ATL Defendants called Mr. Huon "Lawyer of the Day" by poking fun of his false arrest. In 2010, after Mr. Huon was acquitted, the ATL Defendants continued to stalk Mr. Huon online and called him wanton and

27

depraved and implied that he was a serial rapist, an attorney rapist, someone who got away with

rape, a pedophile of bubble gum chewing girls.   The statute defines "Emotional distress" to

mean "significant mental suffering, anxiety or alarm" and "Harass" to mean "to engage in a

knowing and willful course of conduct directed at a specific person that alarms, torments, or

terrorizes that person."   Mr. Huon suffered alarm and anxiety from the posts, because the ATL

Defendants posted on a legal blog visited by lawyers and judges that Mr. Huon was a rapist and a

serial rapist.   Posting on the Internet on one of the most highly trafficked legal blog is like

putting up a billboard on a highway trafficked by only lawyers and judges.   The comments to

the statute defines "electronic communication" broadly as:

> Electronic communication' means any transfer of signs, signals, writings, sounds, data, or
> intelligence of any nature transmitted in whole or in part by a wire, radio,
> electronmagnetic, photoelectric, or photo-optical system. "Electronic communication"
> includes transmissions by a computer through the Internet to another computer."

Desnick v. American Broadcasting Companies, Inc., 44 F.3d 1345 C.A.7 (Ill.),1995.,

cited by Defendants, held that plaintiff ophthalmic surgeon stated a claim for defamation against

ABC's PrimeTime Live for its investigative journalism for calling him a "big cutter".   The ATL

Defendants are not ABC and did no investigative journalism.   Had the ATL Defendants

performed investigative journalism, they would have discovered that Madison County

prosecuted Mr. Huon for cyberstalking for facts less egregious than the ATL Defendants' more

egregious conduct.   Counsel for the ATL Defendants lifted the quote out of context without

quoting the remaining sentences. The Seventh Circuit held that: " . . . If the broadcast itself does

not contain actionable defamation, and no established rights are invaded in the process of

creating it (for the media have no general immunity from tort or contract liability . . ., Desnick,

44 F.3d at 1355. This case was decided in 1995 before the exponential growth of the Internet and the word "social media" entered the American consciousness–before the word cyberstalking was even used.

O'Donnell v. Field Enterprises, Inc., 145 Ill.App.3d 1032 (1st Dist 1986), cited by the ATL Defendants was decided long before the advent of blogs. More importantly, O'Donnell was talking about "If the news media cannot report what it sees and hears at governmental and public proceedings"–not some blogger in his pajamas commenting on a news article. Journalists and reporters are governed by a code of ethic that restrains their conduct. Bloggers and website operators like the ATL Defendants operate unrestrained and unregulated to cause an unlimited amount of harm to individuals with the click of a mouse. The criminal laws are not a sufficient deterrent when blogs like Abovethelaw.com continue to generate cash flow from advertising revenues. The First Amendment does not protect tortious or criminal conduct, as the Seventh Circuit has held. Desnick, 44 F.3d at 1355.

In this case, (1) Mr. Huon is within the class of members for whom the statute was intended to protect; (2) The comments to the cyberstalking act indicates that the legislatures intended to protect people from harassment from websites; (3) implying a remedy is consistent with the legislative scheme to fight cyberbullying and cyberstalking; (4) the cause of action is traditionally allocated to state law. Illinois has an interest in stopping its citizens from being stalked and bullied online. At least one other state court has attempted to create a private cause of action for stalking or cyberstalking. Remsburg v. Docusearch, Inc., 149 N.H. 148, 816 A.2d 1001 (N.H.,2003). Several states have created statutes creating a civil cause of action for stalking. Wyoming W.S.1977 § 1-1-126 (Civil Liability for stalking); Virginia VA Code Ann. §

8.01-42.3 (Civil action for stalking); Oregon O.R.S. § 30.866.

The First District Illinois Appellate Court held that the holding in <u>Galinski v. Kessler</u>, 134 Ill.App.3d 602 (1st Dist. 1985)–cited by Defendants-- does not apply when the conduct is not only unlawful but tortious.   <u>Scott v. Aldi, Inc</u>., 301 Ill.App.3d 459, (1st Dist. 1998).   <u>Galinski v. Kessler</u>,   held that no private cause of action exists for some archaic crime called barratry. Modern day causes of action for malicious prosecution and interference with prospective economic advantage exists as adequate remedies.    Similarly, in another case cited by the ATL Defendants,   <u>Lane v. Fabert</u>,   plaintiff had remedies available other than one which might be implied under the statute.   Plaintiff stated   a claim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill.Rev.Stat.1985, ch. 121 ½, par. 261 et seq.). 178 Ill.App.3d 698, 704-705 (4th Dist. 1989).

In this case, there is adequate remedy for the growing problems of   cyberstalking and cyberbullying.   Like in Mr. Huon's case, prosecutors either do not have the will to try these cases or they overcharge defendants with cyberstalking crimes that have no merit.   Private enforcement of cyberstalking would provide a better shield against the unfettered and unregulated conduct of bloggers.

## X.   MR. HUON STATES A CAUSE OF ACTION FOR CIVIL CONSPIRACY.

The ATL Defendants blatantly misrepresent the law by arguing that Mr. Huon has not alleged an underlying tort.    The underlying tort is defamation, false light, or intentional infliction of emotional distress.   The case cited by Defendant does not apply because the Court held that the underlying tort for defamation was not properly pled and, thus, the civil conspiracy count must fail.   That is not the case here.

Furthermore,   Bell Atlantic Corp established "two easy-to-clear-hurdles". First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .   Here, Defendants are on notice that they defamed Mr. Huon and placed him in a false light.    Defendants are aware of the conspiracy, because they self-identified themselves as the "Above the Law"  Defendants.   The 30+ single space paged complaint alleges in sufficient factual detail the role of each conspirator from Breaking Media to the author Elie Mystal Defendants, John Does 1 to 100, including, John Doe No. 1 a/k/a LatherRinseRepeat, are registered users, writers, or editors of Abovethelaw.com who posted defamatory comments regarding Mr. Huon.   The ATL Defendants know the unlawful conduct of the John Does because the ATL Defendants   removed the defamatory postings in an effort to cover up its misdeeds.   Mr. Huon's right to relief is more than speculative.   The Seventh Circuit explained that for complaints involving complex litigation—for example, antitrust or RICO claims—a fuller set of factual allegations may be necessary to show that relief is plausible.   The U.S. Supreme Court in Bell Atlantic Corp.   wished to avoid the "in terrorem" effect of allowing a plaintiff with a "largely groundless claim" to force defendants into either costly discovery or an increased settlement value.   Smith v. Duffy, 576 F.3d 336, 340 (7th Cir. 2009).    Therefore, if discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim.   Smith v. Duffy, 576 F.3d at 340.   This concern does not apply to your run of the mill lawsuit.   Id,   at 340.   The Seventh   Circuit explained that Ashcroft v. Iqbal--also cited by defendants--was

31

"special in its own way" because a September 11th terrorist attack detainee sued the U.S.

Attorney General and the Director of the Federal Bureau of Investigation and the issue of

intrusive discovery came up again.   <u>Smith v. Duffy,</u> 576 F.3d at 340-341.   Mr. Huon has not

filed a RICO or antitrust lawsuit or a lawsuit against the U.S. Attorney General.     From his

apartment/home office, Mr. Huon has filed a run of the mill defamation lawsuit against bloggers

sitting in their pajamas making a profit by stalking and defaming and cyberbullying people

online

     WHEREFORE, Plaintiff, Meanith Huon, requests that this Honorable Court deny The

Above the Law Defendants' Motion to Dismiss.

      /s/Meanith Huon

     Meanith Huon

Meanith Huon
The Huon Law Firm
PO Box 441
Chicago, Illinois 60690
1-312-405-2789
FAX No.: 312-268-7276
ARDC NO:6230996

## CERTIFICATE OF SERVICE

Under penalties of law, I attest the following documents or items have been or are being electronically served on all counsel of record for all parties on November 30, 2011

### MEANITH HUON'S RESPONSE TO THE ABOVE THE LAW DEFENDANTS' MOTION TO DISMISS

/s/ Meanith Huon

Meanith Huon
The Huon Law Firm
PO Box 441
Chicago, Illinois 60690
Phone: (312) 405-2789
E-mail: huon.meanith@gmail.com
IL ARDC. No.: 6230996