**IN THE U.S. DISTRICT FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MEANITH HUON, ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION NO.: 1: 11-cv-3054 |
| ) | |
| ABOVETHELAW.COM, et. al., ) | |
| Defendants ) | |

**MR. HUON'S AMENDED RESPONSE TO THE
JEZEBEL DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Meanith Huon, in Response to the FRCP 12(b)(6) Motion to Dismiss and Memorandum of Law of Defendants Irin Carmon, Gabby Darbyshire, Nick Denton, Gawker Media, Jezebel.com (the "Jezebel Defendants" or "Defendants") states as follows:

**I. PREFATORY NOTE**

Mr. Huon files this Amended Response to comply with the 15 page limitation per the Court's December 5, 2011 order. Mr. Huon has no pending criminal charges against him, has never been convicted of a felony or misdemeanor, and has never been disciplined. He has practiced law since 1996, is assistant general counsel for two companies, manages a law firm with hundreds of files, has his own practice. Defendants contend that a lawyer can represent clients in hundreds of cases but cannot represent himself. Mr. Huon litigated Stansberry v. Uhlich Children's Home, 264 F.Supp.2d 681 (2003) cases *pro bono*. Mr. Huon *pro se* won an appeal before the Seventh Circuit in Meanith Huon v. Johnson and Bell Ltd, 657 F.3d 641 (7th Cir. 2011). Defendants argue that a lawyer can stand up for the rights of clients but not himself.

Gawker Media disseminates pornography worldwide via Fleshbot.com, branding itself as "the world's foremost blog about sexuality, porn, and adult entertainment . . ." Group Exhibit "A". http://en.wikipedia.org/wiki/Fleshbot. Fleshbot's recent home page post on December 5,

1

2011 opened with "We're in bed, we're naked. My [redacted] is hard and slipping up through her slick, split lips . . .", juxtaposed next to a photograph of a penis in a woman's mouth. Exhibit "B" (redacted version). Gawker Media has entire web pages tagged or devoted to "filth", "defamer", "upskirt" (see for example http://fleshbot.com/upskirt/ ). Group Exhibit "A". Under the guise of "reporting", Gawker Media defames individuals with obscene headlines to generate web traffic. Some of Gawker Media's top stories are "Hey 'Ching' and 'Chong,' Your Chick-fil-A Is Ready", "Philandering Silverware Queen Declares Himself GOP Nominee" (on Newt Gingrich), "The Gays: We Need a New Word for 'Fag Hag'". Group Exhibit "A".

Gawker Media engages in unethical tactics that violate the canons and ethics of journalism, having posted nude videos of the wife of Grey's Anatomy star Eric Dane, falsely reported that a flight attendant had sex with Arnold Schwarzenegger, released excerpts of Sarah Palin's book. Gawker Media is a serial defendant in Federal Court. Gawker Media seem to treat lawsuits as a cost of doing business. Gawker Media's $300 Million Dollar blog empire generates advertising dollars by exploiting women via pornography and posting smut.

More than a year after Mr. Huon was acquitted of sexual assault, the Jezebel Defendants widely disseminated a post calling him the "**Acquitted Rapist**" and implying that he was a one-time sex offender who was unhappy for being called a "serial" rapist. Defendants published Mr. Huon's mug shot, encouraged readers to call him, and provided a "script" for any attention-seeker to bring a copycat claim. Shortly after the Jezebel.com story was posted, Mr. Huon was arrested. No detailed explanation was given to Mr. Huon by the police. On the second court date, the Cook County State Attorney's Office dismissed all charges, without tendering to Mr. Huon any discovery. Mr. Huon Googled the name of the complaining witness, "Stephanie

Andrews" and "Chicago": the results were a woman who worked as keyword editor and writer in the social media industry and who had attended college on the East Coast. http://www.linkedin.com/in/scandrews29 . Mr. Huon is unable to determine if Ms. Andrews is any of the John Does 101 to 200 or her relationship to Jezebel.com, without discovery.

It should be noted, however, that there is no evidence in the original official proceedings in Madison County that Mr. Huon posed as a "talent scout". This fiction was invented or republished by the Above the Law and Jezebel Defendants. Interestingly, the Defendants—who Mr. Huon sued for cyberstalking--seem to have more details of Ms. Andrews' copycat complaint than Mr. Huon. According to Defendants' Memorandum, Ms. Andrews copycat claim alleges that Mr. Huon posed as a "casting agent" like the story in Defendants' blogs but unlike the testimony in the official proceedings. Even more interesting are the contradictions in Defendants' Memorandum: Defendants state that Mr. Huon "has repeatedly been charged with crimes relating to the sexual abuse of women" and that Mr. Huon was charged with "committing four counts of battery" against Ms. Andrews (pages 2-3 of Defendants' Memorandum). However, the criminal offense of battery is distinct from the criminal offense of sexual abuse. Defendants just make things up. Mr. Huon has sustained special damages, hiring a defense attorney to defend Ms. Andrews' copycat complaint and sitting in jail waiting to post an I-bond, as a result of Defendants' defamatory posting. Fleck Bros. Co. v. Sullivan, 385 F.2d 223 (7th Cir. 1967). The charges have been dismissed by the State. Mr. Huon should be given leave to amend his defamation *per quod* count by alleging special damages.

Defendants and its attorneys seem to believe that just because Mr. Huon was falsely arrested by Madison County, he can be defamed and bullied by the world. However, the Seventh

Circuit noted, "such a rule 'would strip people who had done bad things of any legal protection against being defamed; they would be defamation outlaws.'" Desnick v. American Broadcasting Companies, Inc., 44 F.3d 1345, 1351 (7th Cir. 1995). The attorney litigation privilege does not cover the publication of defamatory matter that has no connection whatsoever with the litigation. Restatement (Second) of Torts § 586 comment; Kurczaba v. Pollock, 318 Ill.App.3d 686, (1st Dist. 2000). Defendants insist that the Jezebel.com story can be innocently construed. But the Defendants' own attorneys have rushed to judgment that Mr. Huon is a serial criminal and a sex offender who poses a danger to women on the Internet, without any substantiated facts. Gawker Media, a pornographer, and its attorneys treat Mr. Huon as a convicted sex offender:

> There is certainly a public interest in knowing about alleged sex crimes, and indeed, there has been a great deal of legislative effort and attention to **tracking and reporting on sex offenders.** Reporting on allegations of sexual assault, especially in the context of a defendant who allegedly used the internet, to pose as someone else in order to lure women into meeting him, are of the utmost importance. **It is curious, and somewhat frightening** that the defendants Huon has targeted for his harassing lawsuits are those who publish on the internet—p**recisely the place he has used as a stalking ground on at least two occasions,** and the very tool he has used in the past for bullying (emphasis supplied) (page 12 of Defendants' Memorandum.)

Where did they get this perception? Not from the official proceedings, because Mr. Huon was acquitted. Defendants and its attorneys simply dismiss and second-guess a Madison County jury and a decision of the Cook County State's Attorneys' Office to dismiss Ms. Andrews' complaint as meritless. Defendants admit to the defamatory import of calling Mr. Huon an "Acquitted Rapist" and posting his photograph: Defendants wanted to track and report Mr. Huon as a registered sex offender—even though he has never been convicted of a sex crime. By treating Mr. Huon like a sex offender, promoting a comment encouraging readers to contact Mr. Huon, reporting that he had a $50 Million Dollar lawsuit, Defendants encourage every attention-

seeker like Ms. Andrews to bring a copycat complaint against Mr. Huon.

## I. FACTS

The Jezebel Defendants toss everything but the "kitchen sink" in their statement of "facts" in rambling paragraphs that are unsupported, sometimes irrelevant, and often false assertions of facts.   Factual issues should not be reached on a motion to dismiss under Rule 12(b)(6)." Cook v. Winfrey, 141 F.3d 322, 330-31 (7th Cir. 1998).

## II. ARGUMENT

### A.  THE ILLINOIS CITIZEN PARTICIPATION ACT DOES NOT APPLY .

The Citizen Participation Act, 735 ILCS 110/1 *et seq,* (the "Act") does not apply because Defendants are not procuring favorable government action.  Chi v. Loyola University Medical Center, 787 F.Supp.2d 797, 809 (N.D.Ill.,2011).   The First Amendment does not protect tortious or criminal conduct.  Desnick, 44 F.3d at 1355.

### 1.  MR. HUON IS ENTITLED TO DISCOVERY.

In Doctor's Data, Inc. v. Barrett, Judge Change rule: "Even if the ICPA applied, the Court would not dismiss the state law claims at this early stage . . . the parties would be entitled to engage in limited discovery on . . .[whether] the statements were not genuinely aimed at procuring government action.  2011 WL 5903508 (N.D.Ill.,2011).

### 2. THE QUALIFIED PRIVILEGE UNDER THE ACT DOES NOT APPLY.

   As Judge Kennelly explained in Chi the Act creates only a conditional immunity for actions taken in furtherance of a party's First Amendment rights. 787 F.Supp.2d at 809.  The Act creates a qualified privilege because it may be exceeded if the statements are not made with the genuine aim at procuring a favorable government action.  Sandholm v. Kuecker, 405 Ill.App.3d

835, 850 (2d Dist. 2010). In enacting the Act, the Illinois legislature intended to adopt the "sham" exception to the Noerr–Pennington doctrine. Chi 787 F.Supp.2d at 809. A court must first consider whether objective persons could have reasonably expected to procure a favorable government outcome by way of the allegedly immunized act. Id. If so, then the court need not consider the subjective intent of the actor. Id. By contrast, if the answer to the first question is no, then the court would consider whether the actor's subjective intent was not to achieve a government outcome that may interfere with plaintiff but rather to interfere with plaintiff by using the governmental process itself. Id.

In Global Relief v. New York Times Co. 2002 WL 31045394 (N.D.Ill.,2002), Judge Coar held that the California's Anti–SLAPP did not apply to allegations that the New York Times falsely reported that a charitable organization was under investigation for alleged links to terrorism, because there had been no investigation pending at the time of publication. In Trudeau v. ConsumerAffairs.com, Inc., Judge Lefkow held that the Act did not apply to a defamation lawsuit brought by a consumer advocate against a website called ConsumerAffairs.com, because defendants' statements in the article were not genuinely aimed at procuring favorable government action. ConsumerAffairs.com had incorrectly reported that plaintiff had violated consumer fraud laws and was held in criminal contempt charge.

In Mr. Huon's case, there was no pending investigation of Mr. Huon and the defamatory post with Mr. Huon's mugshot--published more than a year after his acquittal--was not aimed at procuring favorable government action. Defendants and its attorneys treat Mr. Huon as a sex offender with charges pending against him (Defendants' Memorandum, pages 12, 16).

Defendant in Shoreline Towers Condominium Ass'n v. Gassman had filed complaint for

religious discrimination with the Illinois Human Rights Commission and the Attorney General's Office.  Defendant in <u>Wright Development Group, LLC v. Walsh</u> made a defamatory statement at public meeting held at the office of the local alderman.   Defendants in <u>Sandholm v. Kuecker</u> lobbied school officials and  members of the school board to remove a basketball coach.

### B.   PLAINTIFF STATE CLAIMS AGAINST DENTON AND DARBYSHIRE.

On information and belief, Nick Denton found and owns Gawk Media and all of its related blogs and websites, including Jezebel.com.   http://en.wikipedia.org/wiki/Gawker_Media Nick Denton is the *alter ego* of Gawker Media.    Section 805 ILCS 180/10-10(d) does not bar corporate veil piercing, such as *alter ego*, fraud or undercapitalization. <u>Westmeyer v. Flynn,</u>382 Ill.App.3d 952, 960 (1 Dist.,2008).  Mr. Huon can sue Nick Denton under a theory of piercing the corporate veil.  <u>Fontana v. TLD Builders, Inc.,</u> 362 Ill.App.3d 491 (2nd Dist. 2005).

Mr. Huon had asked Gabby Darbyshire, who is the Chief Operating Officer of Gawker Media, to remove the defamatory posts.  As the COO, Ms. Darbyshire has the power to republish the defamatory posts, which continues to be republished daily.  Officers of a corporations can be personally liable for engaging in tortious conduct. <u>Kohler Co. v. Kohler Intern., Ltd.,</u> 196 F.Supp.2d 690 (N.D.Ill.,2002); <u>Drink Group, Inc. v. Gulfstream Communications, Inc.,</u> 7 F.Supp.2d 1009, 1010 (N.D.Ill.,1998).  Separate cause of action for defamation may be stated against additional defendant for separate publication of defamatory material serving as basis for another defamation claim.  <u>Dubinsky v. United Airlines Master Executive Council,</u> 303 Ill.App.3d 317 (1st Dist. 1999).  The republication rule applies to internet postings.  <u>Firth v State of New York,</u> 306 A.D.2d 666 (N.Y.A.D. 3 Dept.,2003).

Defendants are not entitled to sanction, since Defendants did not comply with FRCP

11(c)(2). No discovery has been conducted; Defendants have just asserted conclusions.

## C. THE COMMUNICATIONS DECENCY ACT DOES NOT APPLY

First, the Jezebel Defendants do not have standing to speak for the John Doe Defendants who posted defamatory comments. Second, Gawker Media is an "information content provider" and, thus, is not immune from liability arising from publication of that content under Section 230 of the Communications Decency Act 47 U.S.C. § 230(c)(1) (the "CDA"). Roommates.com, 521 F.3d 1157, 1162 (9th Cir.2008); Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc., 206 F.3d 980, 985 n. 4 (10th Cir.2000). An interactive computer service that is also an "information content provider" of certain content is not immune from liability arising from publication of that content. Id.; 47 U.S.C. § 230(c)(1); F.T.C. v. Accusearch Inc., 570 F.3d 1187 (10th Cir. 2009). The CDA defines the term "information content provider" broadly. 47 U.S.C. § 230(f)(3); F.T.C., 570 F.3d at 1187. In F.T.C., defendant website was sued for providing confidential information—telephone numbers of people. Defendant argued the information was provided by third parties. The Tenth Circuit held that the website "developed" the information by disclosing it on the site and that the defendant was "responsible" because the offending content was the disclosed confidential information itself.

Defendants admit that it "operates news and information websites which report on a wide variety of topics including media and politics" and that it created the offending content on Mr. Huon. Defendants invented facts that were false about Mr. Huon being a rapist and implied he was a sex offender who had to be tracked. In addition, Defendants states on its blog that it controls, blocks, edits and promotes the comments of its readers with a "Featured" and "Promoted Discussion" Comments on Jezebel.com. Defendants "only approve the comments

we love . . ." By promoting certain comments over others, Defendants develops content.

**D. THE COURT SHOULD ALLOW A PRIVATE CAUSE OF ACTION FOR CYBERBULLYING AND/OR CYBERSTALKING.**

The Court an imply a private cause of action for cyberstalking. Sawyer Realty Group, Inc. v. Jarvis Corp., 89 Ill.2d 379, 1386 (Ill. 1982). Given the 15 page limitation, Mr. Huon adopts his argument in his Response Brief to the Above the Law ("ATL") Defendants' Motion to Dismiss. Defendants ask for or Rule 11 sanctions without complying with FRCP 11(c)(2).

**E.     PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION.**

Plaintiff's complaint states a cause of action. In a rambling cut and paste job, the Jezebel Defendants improperly attaches a chart. The Illinois Supreme Court warned against "generally strain[ing] to find unnatural but possibly innocent meanings of words where such construction is clearly unreasonable and a defamatory meaning is more probable" Chapski v. Copley Press, 92 Ill. 2d 350-352, (1982). A chart with no context is the most extreme example of straining .

Defendants continue to misstate the law. Defendants are pornographers and bloggers, not reporters. Defendants posted a defamatory story about a blog, not about an official proceeding. The news media's summary must be "fair" for the privilege to apply. Myers v. The Telegraph, 332 Ill.App.3d 917, 922 (5th Dist. 2002). In this case, a blogger writes a defamatory post about a blog that is not even a fair and accurate summary of an official proceedings. Mr. Huon adopts his arguments in his Response Brief to the ATL Defendants' Motion to Dismiss.

**1.     Plaintiff states a cause of action for defamation and false light claims.**

"A statement need not state the commission of a crime with the particularity of an indictment to qualify as defamatory *per se*." Parker, 324 Ill.App.3d at 1025; Van Horne v. Muller, 185 Ill.2d 299, 308 (Ill. 1998). Reporting that plaintiff has been charged with a crime when

9

there are no pending charges is defamatory *per se*. Gazette, Inc. v. Harris, 229 Va. 1, 325 S.E.2d 713 (Va.,1985); Cianci v. New Times Pub. Co., 639 F.2d 54 (C.A.N.Y., 1980) (Magazine article which recounted fact that charges of rape had once been asserted against mayor, that the charges had been dropped, and that payment had been made to the alleged victim was capable of bearing a defamatory meaning). In Van Horne, the Illinois Supreme Court held that a newscaster defamed the plaintiff when the newscaster repeated the false account of a story during her news broadcast that the plaintiff had assaulted a disc jockey. Van Horne, 185 Ill.2d at 308. Hyperlinking a defamatory content is a re-publication of the defamatory content. Pisani v. Staten Island University Hosp., 440 F.Supp.2d 168 (N.Y.,2006); In re Perry, 423 B.R. 215 (Tex.,2010).

      In this case, Defendants posted a picture of Mr. Huon's mugshot juxtaposed next to the headlines in large bold letters "**Acquitted Rapist Sues Blog For Calling Him Serial Rapist**" more than a year after Mr. Huon was acquitted and with no criminal charges pending against him. Exhibit "C". Defendants invented the fact that Mr. Huon, a rapist, was suing the ATL blog for implying that he was a "serial" rapist. This comment in conjunction with the headlines **"Acquitted Rapist Sues Blog For Calling Him Serial Rapist"** just reinforces the idea that Mr. Huon is a one-time sex offender. As Defendants admit, the import of Defendants' post was that Mr. Huon is a sex offender who needs to be tracked and reported to the world. In the body of the post, Defendants invented that Mr. Huon was acquitted because of the testimony of a bartender, when the strength of the evidence favoring Mr. Huon's case was overwhelming. Defendants omitted that the complainant was caught lying on the stand, that there was no evidence of an advertisement found on Mr. Huon's computers, that there was no evidence of sexual contact. Then Defendants close with the remark that "Google only takes you so far" as if Mr. Huon had a

criminal past to hide. Defendants then promoted comments that defamed Mr. Huon and blocked his rebuttal. Defendants promoted comments that reinforced the defamatory statements, such as "So he is actually upset about the "Serial" rapist part, actually he is just a one time accused rapist", or "According to the link under "strength" he traveled to another city, . . . Now, that doesn't mean that he did/didn't rape her, but it is a goddamn shady way to start off an evening. He must have had some damn good lawyers to push that out of the jury's mind." Defendants omitted the fact that Mr. Huon as a financial advisor was working for Edward Jones Investments based in St. Louis. Defendants buried comments favorable to Mr. Huon, such as "Excuse me, but can we not call this guy an "acquitted rapist"? He was acquitted, so he's not guilty. He is not a rapist, end of story. He is a man acquitted of rape, but he is most definitely not a rapist, modifying adjective or not." A copy of the facts invented by Defendants is attached as Exhibit "D". Because Mr. Huon has pled defamation *per se,* he does not need to allege special damages. Mr. Huon adopts his arguments in his Response Brief to the ATL Defendants' Motion to Dismiss.

**2. The requirements of the Fair Report Privilege are not met and the privilege does not extend to pornographers and bloggers.**

Mr. Huon adopts his arguments in his Response Brief to the ATL Defendants' Motion to Dismiss, for the sake of brevity and the 15-page limitation.

**3. The Defendants did not give a full and fair reporting of the original proceedings.**

For the privilege to apply, a new media's summary must be "fair" for the privilege to apply. A fair abridgment means that the report must convey to readers "a substantially correct account." Restatement (Second) of Torts § 611, Comment f, at 300 (1977); Solaia Technology, LLC, 221 Ill.2d at 589-590. The privilege does not permit the expansion of the official report by

the addition of fabricated evidence designed to improve the credibility of the defamation. Snitowsky v. NBC Subsidiary (WMAQ-TV), Inc., 297 Ill.App.3d 314, 310 (1st Dist. 1988). The privilege does not apply to an inaccurate account of the proceedings; Myers v. The Telegraph, 332 Ill.App.3d 917, 922 (5th Dist. 2002); Lowe v. Rockford ,179 Ill.App.3d 592, 597 (2nd Dist. 1989). In this case, the Jezebel Defendants omitted that Mr. Huon was acquitted, that there were no charges pending against him, that he sued the ATL blog for calling him not just a "serial rapist" but also a "rapist". Had Defendants actually reviewed the official proceedings, Defendants would have known that the consent defense had been barred and, thus, the jury had to make a finding that no sexual contact took place or that there was no use of force—that there was no rape. Having a finding that no sexual assault even took place is not the same as contending sex did take place but it was consensual. Defendants knew that Mr. Huon sued Madison County in Case No. 11-cv-3050 but never even reviewed the complaint, which details all these facts. Defendants omitted that the complaining witness cyberstalked Mr. Huon and that the cyberstalking charges languished for seven months and were dismissed on the day the former Madison County State's Attorney was sworn in as a judge. Defendants omitted that the Madison County detectives seized every computer in Mr. Huon's apartment and examined each computer's metadata and found no other alleged victims and other facts.

   **4. The First Amendment does not protect defamation, Defendants have the burden to prove that the privilege applies, it's a question of fact whether the privilege applies, and the Court can take judicial notice of Mr. Huon's acquittal.**

For brevity sake, Mr. Huon adopts his arguments in his Response Brief to the ATL Defendants' Motion to Dimiss. Accusations of criminal activity, even in the form of opinion, are not constitutionally protected. Cianci v. New Times Pub. Co., 639 F.2d 54, 63 (C.A.N.Y., 1980).

While inquiry into motivation is within the scope of absolute privilege, outright charges of illegal conduct, if false, are protected solely by the actual malice test. Id.  No First Amendment protection enfolds false charges of criminal behavior. Gregory v. McDonnell Douglas Corp. (17 Cal.3d 596, 604, 131 Cal.Rptr. 641, 646, 552 P.2d 425 (1976)).  Almost any charge of crime, unless made by an observer and sometimes even by him, is by necessity a statement of opinion. It would be destructive of the law of libel if a writer could escape liability for accusations of crime simply by using, explicitly or implicitly, the words "I think". Cianci, 639 F.2d at 63-64.

Defendants have the burden of proving that the privilege applies, which Defendants have failed to meet.  Lowe v. Rockford Newspaper, Inc., 179 Ill.App.3d 592  (2nd Dist. 1989).  Attached as Exhibit  "E", "F", and "G" are copies of the jury's verdict acquitting Mr. Huon in 08 CF 1496 on May 6, 2010, the court's order dismissing all charges against Mr. Huon on December 6, 2010, and a news article regarding Former Madison County State's Attorney Bill Mudge being sworn in as judge on or about December 6, 2010.

### 5. Count II, intentional infliction of emotional distress, states a claim.

As discussed in the preceding paragraphs, Defendants and its attorneys engaged in extreme and outrageous conduct: more than a year after a jury acquitted Mr. Huon, Defendants disseminates a story calling Mr. Huon a rapist.  Defendants and its attorneys bully and treat Mr. Huon like he was a convicted sex offender who needed to be tracked and reported like he was a sex offender.  Defendants would have the world believe that Mr. Huon, having survived a Cambodian Holocaust  and having been acquitted in Madison County is a closet "Ted Bundy" who—in between working three jobs as an attorney at a law firm and assistant general counsels and managing his own practice—can find the time to meet and lure women on the Internet and

sexually abuse them. Defendants' defamatory post and call for its readers to track Mr. Huon led every attention-seeker like Stephanie Andrews filing a false complaint. The name calling and personal attack on Mr. Huon-- having nothing to do with this lawsuit--in Defendants' Memorandum is outrageous. For brevity sake, Mr. Huon adopts his arguments in his Response Brief to the ATL Defendants' Motion to Dimiss.

### 6. Plaintiff states a claim for civil conspiracy.

Mr. Huon alleges sufficiently that at least one of the Gawker defendants committed any overt tortious or unlawful act, in furtherance of an alleged conspiracy—Defendant Carmon wrote the defamatory article. Mr. Huon has alleged that Gawker Media promoted defamatory comments and that the Defendants continued to republish the post, knowing it was false. Defendants even refer to themselves collectively as the Gawker Defendants. <u>Thermodyne Food Service Products, Inc. v. McDonald's Corp.</u>, decided on a summary judgment, held the underlying tort and conspiracy to commit the tort could stand.

### 7. The Doctrine of Incremental Harm Does Not Apply.

Defendants argues "the court can take judicial notice of the fact that Plaintiff was subsequently arrested and criminally charged with posing as "Nick Kew" a casting agent for the William Morris agency . . . " From what source? Mr. Huon has never seen the police report. Where did the Defendants get this information--from stalking Mr. Huon? There are no charges pending against Mr. Huon, and the Cook County State's Attorney's Office quickly dismissed the charges. For more than a year, Mr. Huon was getting his life back. If anything, Defendants' defamatory post treating Mr. Huon as a convicted sex offender who needed to be tracked and reported led to more false charges against him by every potentially mentally

unstable person who read the article. Defendants' attorneys calls Mr. Huon a sex offender and implies that he needs to be tracked. This argument is so contrived and disingenuous that it sounds like a screenplay, especially coming from Gawker Media—a purveyor of pornography with sites devoted to upskirt images. Defendants continue to insist that Mr. Huon is a rapist:

> Of course any damage to Plaintiff's reputation alleged caused by an eleven sentence item which reported on a lawsuit Plaintiff filed against Abovethelaw.com must be considered in the context of Plaintiff's extent reputation in the wake of his publicized arrest in connection with allegations of rape, witness tampering, and cyberstalking (Page 23 of Defendants' Memorandum.)

What "publicized arrest in connection with allegations of rape, witness tampering, and cyberstalking"? There are no pending charges against Mr. Huon. The ATL Defendants removed its defamatory post. The Belleville News-Democrat removed any defamatory articles. A Google of Mr. Huon produces the Jezebel.com's defamatory post at the top of the result.

Gist v. Macon County Sheriff's Dep't doesn't apply the doctrine of incremental harm but makes a passing reference to Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1228 (7th Cir.1993). As the Seventh Circuit explained:

> Haynes had been decided on summary judgment, after the defendants had obtained the complete facts about Mr. Haynes in discovery. We said that the question whether a defamatory work is substantially true although erroneous in some details is ordinarily a jury question but that given the facts that had emerged in discovery no reasonable jury could find a significant incremental harm . . .

The Seventh Circuit then reversed the trial court for applying the doctrine at the pleading stage and dismissing the defamation count. Desnick ,44 F.3d at 1350.

WHEREFORE, Plaintiff, Meanith Huon, requests that this Honorable Court deny The Jezebel Defendants' Motion to Dismiss.

/s/Meanith Huon

Meanith Huon

Meanith Huon
The Huon Law Firm
PO Box 441
Chicago, Illinois 60690
1-312-405-2789
FAX No.: 312-268-7276
ARDC NO:6230996

## **CERTIFICATE OF SERVICE**

Under penalties of law, I attest the following documents or items have been or are being electronically served on all counsel of record for all parties on December 12, 2011:

**MEANITH HUON'S AMENDED RESPONSE TO THE JEZEBEL DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW**

/s/ Meanith Huon

Meanith Huon
The Huon Law Firm
PO Box 441
Chicago, Illinois 60690
Phone: (312) 405-2789
E-mail: huon.meanith@gmail.com
IL ARDC. No.: 6230996