UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| MEANITH HUON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-cv-03054 |
| ) | |
| ABOVETHELAW.COM, DAVID LAT, ELIE ) | Judge Aspen |
| MYSTAL, BREAKINGMEDIA.COM, JOHN ) | |
| LERNER, DAVID MINKIN, BREAKING MEDIA, ) | Magistrate Judge Gilbert |
| JOHN DOES 1 to 100, GAWKER MEDIA a/k/a ) | |
| GAWKER.COM, JEZEBEL.COM, NICK DENTON, ) | |
| IRIN CARMON, GABY DARBYSHIRE, JOHN ) | |
| DOES 101 to 200, LAWYERGOSSIP.COM, JOHN ) | |
| DOE NO. 201, NEWNATION.ORG a/k/a ) | |
| NEWNATION.TV a/k/a NEW NATION NEWS, and ) | |
| JOHN DOE NOS. 401, 402, and 403, ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF ABOVE THE LAW DEFENDANTS'
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

In his response brief, Plaintiff focuses more on inventing new allegations and claims than he does on responding to the ATL Defendants' actual arguments. Plaintiff claims to find meanings and implications in the Post that simply do not exist. He hardly begins to address the specific allegations of his complaint and attempts to blame the ATL Defendants for the volume of his complaint. He repeatedly mischaracterizes the applicable law and discusses case law without relating it to the issues in this case. Plaintiff's response only further makes clear that Plaintiff has filed this lawsuit because he is upset that his rape trial was publicized at all and is trying to purge the Internet record of that publicity. Plaintiff has not stated any valid legal claim based on the Post.

I.  **THE COURT SHOULD DISREGARD PLAINTIFF'S NEW ALLEGATIONS AND CLAIMS**

The Court should disregard Plaintiff's new factual allegations in the response brief,[1] which are not found in the Complaint.[2]

Throughout the Response, Plaintiff now claims that the Post accuses him not only of rape, but rape of children. (See, e.g., Response at 7 (claiming that the Post is "about Mr. Huon posing as a talent scout to rape bubblegum princesses"); id. at 15 ("The entire article is about rape stories of little girl [sic].").) Plaintiff's Complaint does not contain such an allegation, and at any rate the Post contains no such statements. Plaintiff emphasizes the phrase "bubble gum princesses" from the Post, repeating it ten times in the Response. However, the Post does not use that phrase to describe Plaintiff's alleged victim; rather, those words appear in a self-deprecating joke in the Post at its author's expense. (See Memorandum Ex. A at 1 (After describing the alleged victim's testimony that Plaintiff had "allegedly listed Craigslist ads where he claimed to be a talent scout for models," the Post's author writes, "So far, so good. I once pretended to be an Ostrich rancher from sub-Saharan Africa because I was trying to impress bubble gum princesses at a BU party.").) The Post clearly does not state that Plaintiff was accused of raping "little girls," as Plaintiff now contends. (Response at 15, 17.)

Additionally, Plaintiff newly alleges in the Response that the Post is defamatory because it links to a newspaper article and a blog post on another website that Plaintiff claims are

---

[1] This brief is a reply to what Plaintiff calls his "Second Amended" response to the ATL Defendants' motion to dismiss, Docket No. 95. Plaintiff filed two previous response briefs, which were over-long and were filed without leave of court. (Docket Nos. 79, 84.) This brief will refer to the "Second Amended" response brief as the "Response." Plaintiff has never complied with the Court's December 5, 2011, order requiring him to file a "summary" of his response brief and has not complied with Local Rule 7.1, which requires that briefs longer than 15 pages include a table of contents and table of cases.

[2] This brief will use the same defined terms as the ATL Defendants' opening brief (the "Memorandum").

defamatory. (See Response at 11 ("The hyperlinks to the defamatory statements of the Madison record and Lawyergossip.com were republication of more defamatory statements . . . .").) Plaintiff does not specify what information on those other websites he claims is actionable, and any such claim would be barred by the statute of limitations. See Salyer v. Southern Poverty Law Ctr., Inc., No. 3:09-CV-44-H, 2009 U.S. Dist. Lexis 113511 (W.D. Ky. Dec. 4, 2009) (hyperlink is not publication for statute of limitations purposes).

## II. THE ATL DEFENDANTS HAVE APPROPRIATELY ADDRESSED PLAINTIFF'S VOLUMINOUS ALLEGATIONS

The ATL Defendants appropriately provided the Court with a chart that outlined their arguments in response to each of the Complaint's numerous allegations. That chart explains which defenses apply to each of the Complaint's allegations and puts those allegations side by side with both the Post's language and the relevant portions of the transcript of Plaintiff's criminal trial.

Ironically, Plaintiff complains about this method of presenting the ATL Defendants' arguments. The Complaint is much longer than the Post. The ATL Defendants endeavored to present their grounds for dismissal clearly and efficiently and did so in far less space than Plaintiff has used to respond. As for Plaintiff's argument that the ATL Defendants "lift[ ] sentences and words out of their natural meaning in the context that they were used [sic]" (Response at 16), the chart directly quotes the language of the Complaint and provides the Court with context by cross-referencing both the Post and the trial transcript. Additionally, the ATL Defendants, and not Plaintiff, provided the Court with a complete, readable version of the Post. (Memorandum Ex. A.)

3

### III. THE FAIR REPORT PRIVILEGE APPLIES

#### A. Plaintiff Misstates The Law

Plaintiff misstates the law relating to the fair report privilege in several respects.

Much of Plaintiff's argument relating to his defamation claim concerns the reporter's privilege, the procedural protection that prevents courts from requiring journalists to reveal their sources in certain situations. (See Response at 2-4 (citing In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141 (D.C. Cir. 2005), and Too Much Media, LLC v. Hale, 20 A.3d 364 (N.J. 2011)).) No such issue exists in this case, and the Court should disregard these irrelevant arguments.[3] See Restatement (2d) of Torts, § 611 cmt. a (The fair report privilege is "one of general publication and is not limited to publication to any person or group of persons.").

Plaintiff asserts that his allegations of actual malice overcome the fair report privilege. (Response at 10.) Plaintiff is flat wrong on this. The Illinois Supreme Court has held that "the fair report privilege overcomes allegations of either common law or actual malice." Solaia, 221 Ill. 2d at 587, 852 N.E.2d at 843; see also Restatement (2d) of Torts, § 611 cmt. a ("[T]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false.").

Plaintiff asserts that the fair report privilege does not apply to claims of defamation per se. (See Response at 4-5.) Plaintiff is incorrect, and none of the cases that he cites support his argument. See, e.g., Solaia Tech., LLC v. Specialty Publ'g Co., 221 Ill. 2d 558, 597, 852 N.E.2d 825, 848 (Ill. 2006) (applying fair report privilege to claim of defamation per se).

---

[3] The ATL Defendants dispute Plaintiff's assertion that they are "not reporters or journalists" (Response at 2) and dispute Plaintiffs' assertion that the reporter's privilege would not apply to them in an appropriate case. However, those issues are irrelevant to the question of whether the fair report privilege applies.

4

Plaintiff is incorrect to suggest that the fair report privilege is unavailable to the ATL Defendants because they were not actually present at Plaintiff's trial. The law imposes no such requirement. See Binder v. Triangle Pubs., Inc., 275 A.2d 53, 58 (Pa. 1971) (applying fair report privilege where reporter did not attend first day of criminal trial but reported on opening statements and testimony of prosecution witnesses that occurred that day; "how a reporter gathers his information concerning a judicial proceeding is immaterial provided his story is a fair and substantially accurate portrayal of the events in question"); see also Howell v. Enter. Publ'g Co., LLC, 920 N.E.2d 1, 18 (Mass. 2010) ("The privilege to report official actions would mean very little . . . if to qualify for its protection, the media were limited to reporting such actions solely on the basis of on-the-record statements by high-ranking (authorized to speak) officials or published official documents. Consequently, the privilege extends to reports of official actions based on information provided by nonofficial third-party sources."); Beary v. West Pub. Co., 763 F.2d 66, 69 (2d Cir. 1985) ("[S]ince the published West report was 'fair and true' the route by which it reached West is immaterial.").

Plaintiff is also incorrect to suggest that the ATL Defendants are not permitted to comment on the testimony at Plaintiff's trial. Contrary to Plaintiff's assertions, the Post's commentary on the trial does not state any facts other than what actually occurred at the trial. A "flippant" or "'smart alecky' style of writing . . . to create reader interest" does not cause a publication to lose the fair report privilege. Sellers v. Time, Inc., 299 F. Supp. 582, 585 (E.D. Pa. 1969), aff'd 423 F.2d 887 (3d Cir. 1970) ("Even such a respected periodical as United States Law Week, sometimes adds 'color' to enliven an otherwise routine and dull account of a legal decision."). Plaintiff cites cases involving publications that did not accurately summarize public proceedings (see Response at 10), but the same is not true here.

### B. The Fair Report Privilege Does Not Require Independent Investigation

Plaintiff complains that the ATL Defendants did not independently investigate whether the alleged rape victim's testimony at his criminal trial was true[4] and published the Post after Plaintiff was acquitted (apparently within minutes of the acquittal). No such investigation is required for the fair report privilege to apply, and Plaintiff's allegations do not defeat the privilege.

The recent case of Eubanks v. Northwest Herald Newspapers, 397 Ill. App. 3d 746, 922 N.E.2d 1196 (Ill. 2d Dist. 2010), is analogous here. In that case, a newspaper received an e-mail from local police stating that the plaintiff had been arrested and prepared a short article for publication. The police later sent a second e-mail stating that another person, and not the plaintiff, had been arrested, but the newspaper's staff did not receive the second e-mail until after the article had been published. The trial and appellate courts agreed that the fair report privilege applied in those circumstances. "Even though what was reported in the defendant's publication was false, the privilege still applies because the defendant completely and accurately reported what it had seen." Id. at 750, 922 N.E.2d at 1200. "[T]he state of the law at this time does not include a timeliness component, or an obligation to review updated information, in determining the fairness and accuracy of a published report." Id. at 751, 922 N.E.2d at 1201 (emphasis added). Similarly, the ATL Defendants do not lose the fair report privilege by publishing an accurate report that was untimely when it was published.

The Post is an accurate report of the proceedings on the first day of Plaintiff's trial. If Plaintiff's view of the law were correct, then no one could ever comment on a news report about

---

[4] Plaintiff's arguments in this regard are contradictory, as he both argues that the ATL Defendants knew that the trial testimony was false and that they performed no independent investigation to verify the testimony.

a trial without subjecting themselves to a lawsuit to determine the truth or falsity of the testimony at the trial. The Court should reject Plaintiff's attempt to limit commentary on public proceedings.

      **C.    The Court May Properly Consider The Transcript of Plaintiff's Trial To Evaluate The Fair Report Privilege**

The Court should review and consider the transcript of Plaintiff's trial in evaluating the fair report privilege. Plaintiff argues that the ATL Defendants should be required to include "the entire official proceedings," including "the police report" and "the written statements of the complaining witness." (Response at 9-10.) Requiring such detail is contrary to the very idea of the fair report privilege, which applies to fair and accurate <u>summaries</u> of public proceedings. Plaintiff argues that the trial transcript presents "questions of fact," but he does not identify any such questions. (Response at 9.)

**IV.    THE POST EXPRESSES CONSTITUTIONALLY-PROTECTED OPINION**

Plaintiff argues that the First Amendment's protection of expressions of opinion from liability does not apply in this case because the Post "is not of public concern." (Response at 12 ("[T]here are no First Amendment considerations in this case.").) Plaintiff is clearly incorrect. "The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." <u>Cox Broad. Corp. v. Cohn</u>, 420 U.S. 469, 492 (1975).

Plaintiff is also incorrect to suggest that the distinction between fact and opinion cannot be determined on a motion to dismiss. The Memorandum cites cases that resolved this issue on motions to dismiss. (<u>See</u> Memorandum at 4.) Plaintiff cites <u>Bryson v. News Am. Publ'ns, Inc.</u>, 174 Ill. 2d 77, 672 N.E.2d 1207 (Ill. 1996), which held that the publication at issue in that case

7

contained statements of fact and not merely opinion, but the facts of that case are not similar to ours. The statements that Plaintiff characterizes as fact are comments on and descriptions of his trial proceedings, which themselves are subject to the fair report privilege. (See Response at 13 (complaining about the Post's description of the information about Plaintiff's trial as coming "from the files of the wanton and depraved" and its characterization of the alleged conduct as "allegedly turning dastardly").) The Post does not assert additional facts aside from what actually occurred at trial.

## V. PLAINTIFF FAILS TO ALLEGE SPECIAL DAMAGES

In the Memorandum, the ATL Defendants argue that Plaintiff fails to allege special damages in support of his defamation per quod claim relating to the Post's implication that the criminal charges against him stemmed from more than one complainant. (See Memorandum at 5-6.) For the most part, Plaintiff does not directly respond to that argument. Instead, Plaintiff repeatedly argues that an accusation of rape is defamation per se. Here, however, Plaintiff was in fact charged with rape, so reporting that fact cannot be defamatory at all, let alone defamatory per se.

Plaintiff argues that the Post's implication that the charges against him stemmed from more than one complaining witness is defamatory per se, citing Myers v. Telegraph, 332 Ill. App. 3d 917, 773 N.E.2d 192 (Ill. 5th Dist. 2002). (See Response at 11-12.) In that case, the court held that a publication was defamatory per se where it stated that the plaintiff had been convicted of a felony, when the plaintiff in fact had only been convicted of a misdemeanor. Myers, 332 Ill. App. 3d at 922, 773 N.E.2d at 197. This case differs from that situation. Here, Plaintiff was charged with and tried for the crimes as described in the Post, and the only alleged falsity is the identity of the complaining witness. In the Memorandum, the ATL Defendants cite cases that deal with this question in similar circumstances and hold that a mischaracterization of

8

the details of a criminal matter is not defamatory per se. (See Memorandum at 5.) The ATL Defendants submit that the cases they have cited are more closely analogous to this case than Myers, and their reasoning should apply here.

## VI. PLAINTIFF'S ARGUMENTS ABOUT THE INNOCENT CONSTRUCTION RULE ARE INAPPOSITE

Plaintiff devotes three pages of the Response to argument about the innocent construction rule. (Response at 14-16.) The innocent construction rule provides that a statement "cannot be actionable per se" if, "considered in context, with the words and the implications therefrom given their natural and obvious meaning . . . , the statement may reasonably be innocently interpreted." Chapski v. Copley Press, 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199 (Ill. 1982). The ATL Defendants did not make an argument about the innocent construction rule in the Memorandum. Further, Plaintiff contradicts his own argument by repeatedly attempting to find meanings in the Post that are plainly not there, such as his new contention that the Post accuses him of the rape of a child.

## VII. PLAINTIFF'S LEGAL ARGUMENTS CONCERNING HIS EMOTIONAL DISTRESS CLAIM ARE INCORRECT

The ATL Defendants have argued that Plaintiff's IIED claim fails because, among other reasons, the First Amendment protections that prevent his defamation claim equally apply to a claim for IIED. (See Memorandum at 8 (citing Hustler Magazine v. Falwell, 485 U.S. 46, 53-56 (1988)).) The Supreme Court has recently applied the same principles in Snyder v. Phelps, 131 S. Ct. 1207, 1215 (2011) ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress.") (citing Hustler, 485 U.S. at 50-51). In response, Plaintiff contends that Hustler is no longer good law (see Response at 18), but the cases he cites do not suggest any disagreement with Hustler.

9

### VIII. PLAINTIFF'S ARGUMENTS ABOUT ILLINOIS'S CYBERSTALKING STATUTE LACK LEGAL SUPPORT

In the Memorandum, the ATL Defendants argued that the Court should dismiss Plaintiff's claim under Illinois's criminal cyberstalking statute because no private right of action exists under the statute, nor should one be implied. In response, Plaintiff mainly discusses the fact that he was charged with cyberstalking the complainant in his rape case. Plaintiff ascribes theories to the prosecutors in that case and apparently wishes for this Court to make a legal determination based on those arguments. (See Response at 20-22.)

Plaintiff cites no proper legal authority in support of his arguments. Plaintiff cites Remsburg v. Docusearch, Inc., 816 A.2d 1001 (N.H. 2003), as an example of a "state court [that] has attempted to create a private cause of action for stalking or cyberstalking" (Response at 22), but that description is not accurate. The Remsburg court did not consider implying a cause of action from a criminal statute; the only statute at issue in that case expressly provided for a private cause of action and was not a criminal stalking statute. See 816 A.2d at 1010-11.

### IX. PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS AS A MATTER OF LAW

Plaintiff's conspiracy claim fails as a matter of law. In addition to the reasons stated in the Memorandum, Plaintiff's claim fails because he apparently alleges[5] a conspiracy between individuals who are agents of the same principal, which is not valid under Illinois law. See Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (Ill. 1998) ("[B]ecause the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent."); Van Winkle v. Owens-Corning Fiberglass

---

[5] Plaintiff makes clear for the first time in the Response that the alleged conspiracy is among the ATL Defendants, not between any of the ATL Defendants and other defendants in this litigation. (See Response at 23 ("Defendants are aware of the conspiracy, because they self-identified themselves [sic] as the 'Above the Law' Defendants[.]").)

Corp., 291 Ill. App. 3d 165, 173, 683 N.E.2d 985, 991 (Ill. 4th Dist. 1997) ("[A] civil conspiracy cannot exist between a corporation's own officers or employees."). (See Complaint ¶¶ 9-10 (alleging principal/agent relationships between the ATL Defendants).)

Additionally, Plaintiff's allegations fail under Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In the Response, Plaintiff argues that those landmark cases apply only in antitrust and RICO cases, not "your run of the mill lawsuit." (Response at 23.) Plaintiff is incorrect. Iqbal "clarified that Twombly's plausibility requirement applies across the board, not just to antitrust cases." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) (affirming dismissal of civil conspiracy and malicious prosecution claims).

## X. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

The Court should dismiss Plaintiff's claims with prejudice. Plaintiff suggested in his initial response brief (which was over-long and filed without leave of court) that he would request leave to amend the Complaint to allege special damages in support of a claim of defamation per quod. (See Docket No. 79 at 15.) Plaintiff does not make any such request in the Response, however, and the ATL Defendants oppose any further amendment.

Leave to amend a complaint "is inappropriate where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Mertens v. Hummell, 587 F.2d 862, 865 (7th Cir. 1978) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff filed this lawsuit in May 2011 and has already amended his complaint twice. The ATL Defendants filed their motion to dismiss in September 2011, and since that time Plaintiff has filed a response and put the ATL Defendants to the task of filing this reply. The Post was published in May 2010, and Plaintiff could have alleged any damages resulting from that publication in the first version of his

complaint. Even now, Plaintiff does not suggest what his special damages would be. The Court should not allow Plaintiff to make serial amendments to his complaint.

## XI. CONCLUSION

WHEREFORE, the ATL Defendants respectfully request that the Court dismiss the claims against them in Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice, and provide such further relief as is just.

Dated: December 19, 2011

Respectfully submitted,

BREAKING MEDIA, LLC (erroneously sued as AboveTheLaw.com, BreakingMedia.com, and Breaking Media), DAVID LAT, ELIE MYSTAL, JOHN LERNER, and DAVID MINKIN

By: /s/ Steven P. Mandell
One of their attorneys

Steven P. Mandell (ARDC #6183729)
Steven L. Baron (ARDC #6200868)
Sharon R. Albrecht (ARDC #6288927)
MANDELL MENKES LLC
One North Franklin, Suite 3600
Chicago, IL 60606
(312) 251-1000