THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEANITH HUON, | ) |
|           Plaintiff, | ) |
| | ) CIVIL ACTION NO.: |
|   -against- | ) 1:11-CV-3054 (MEA JTG) |
| | ) |
| GAWKER MEDIA a/k/a GAWKER.COM, | ) |
| JEZEBEL.COM, NICK DENTON, IRIN | ) |
| CARMON & GABY DARBYSHIRE | ) |
| | ) |
|           Defendants | ) |
| | ) |

**GAWKER DEFENDANT'S REPLY IN SUPPORT OF GAWKER DEFENDANTS
MOTION TO DISMISS PURSUANT TO 12(b)(6)**

      The Gawker Defendants have been sued in the instant matter for an eleven sentence item which accurately reported on Plaintiff's lawsuit against the ATL Defendants for reporting on Plaintiff's rape trial. To be clear, Gawker Defendants have never asserted that Mr. Huon was convicted of a felony, only that he was charged with rape, as he concedes he was. Gawker Defendants also have never alleged that charges are currently pending against him for battery concerning the fondling of a different woman's breasts and vagina—only that those charges *were* pending, as he concedes they were.[1]

      Though not pled in the initial complaint, Defendants feel obliged to respond to the fact that on pages three through five of his response, Plaintiff spends a good deal of time

---

[1] It should also be noted that the those charges were *not mentioned at all in the Gawker Defendants' post*, but rather cited in Defendants' motion to dismiss in reference to the incremental harm doctrine.

implying a newly invented connection between the Gawker Defendants and the woman who brought the sex-related battery charges against Plaintiff.[2] The sole support Plaintiff musters for this paranoid fantasy is the fact that "Shortly after the Jezebel.com story was posted, Mr. Huon was arrested. No detailed explanation was given to Mr. Huon by the police" (See Plaintiff's Response at 2) and that "the Defendants…seem to have more details [of the battery complaint] than Mr. Huon." (Plaintiff's Response at 3). On this basis, Plaintiff detects some connection between an eleven sentence item reporting on Mr. Huon's suit against the ATL Defendants and his subsequent arrest on sex-related battery charges. Whether this concerns a damage or liabilty claim or is merely on plaintiff's mind is unclear, but as Mr. Huon should (but evidently does not) know, the references to the battery arrest, (raised by the Gawker Defendants not in the post at issue, but in the context of an incremental harm argument) come directly from the complaint filed against him and attached herewith as Exhibit A. That very complaint contains the language Mr. Huon sees at the heart of this newly alleged and apparently nefarious plot: specifically that Plaintiff did "without legal justification, knowingly and intentionally make physical contact with [Victim's Name] in that he fondled the vagina of the victim after posing as a casting agent for William Morris Inc." In Plaintiff's view, "Defendants and its attorneys seem to believe that just because Mr. Huon was falsely arrested by Madison County, he can be defamed and bullied by the world." To be clear, the Defendants in this case believe no such thing. Mr. Huon has neither been defamed nor bullied. Instead, Mr. Huon, a serial plaintiff who has already had a separate defamation

---

[2] In terms of Plaintiff's rambling and pornography obsessed "Prefatory Note," Gawker Defendants will only point out that the website that Plaintiff has spent so much time oogling and takes such seeming delight in describing, is neither a named defendant in this action, nor even part of the same corporation.

suit dismissed[3] as meritless, is the one who regularly abuses the civil justice system to deter anyone who would accurately report on his activities. The explanation for these abuses of process can be found on pages four and five of his rambling response in which Plaintiff professes a belief that "defendants encourage every attention-seeker or mentally unstable individual like [Victim in the Cook County Case] to bring a copycat claim against Mr. Huon." That Plaintiff fears being arrested in the future for "copycat" sexual abuse claims is understandable, but utilizing a strategy of unsupportable defamation claims filed against media defendants reporting on his cases and lawsuits is not.

I. THE GAWKER DEFENDANTS HAVE APPROPRIATELY ADDRESSED PLAINTIFF'S VOLUMINOUS AND CONFUSING ALLEGATIONS

The Gawker Defendants appropriately provided the Court with a chart that outlined their arguments in response to each of the Complaint's numerous and often confusing allegations. That chart explains in exceptional detail precisely which defenses apply to each of the Complaint's allegations and puts those allegations side by side with both the Post's language, source of the information, and defenses. (See Memorandum Ex. F.) The chart also details the multiple allegations Plaintiff claims are defamatory, but are not even contained in the Gawker Defendants' post.

It is ironic that Plaintiff complains about this method of presenting Defendants' arguments given that his Complaint is much longer than the Post itself. In the chart, the Gawker Defendants present their sourcing and grounds for dismissal clearly and efficiently and did so in far less space than Plaintiff has used to respond.

---

[3] After he was fired by Johnson & Bell, plaintiff filed suit contending that performace evaluations deeming him "incompetent," and "require[ing] a higher level of supervision" constituted defamation. That case was dismissed by Judge Johnson-Bryce on July 29th, 2009.

## II. THE FAIR REPORT PRIVILEGE BOTH APPLIES AND IMMUNIZES THE GAWKER DEFENDANTS

Plaintiff misstates the law relating to the fair report privilege in several respects. Much of Plaintiff's argument relating to his defamation claim concerns the reporter's privilege, the procedural protection that prevents courts from requiring journalists to reveal their sources in certain situations. No such issue exists in this case, and the Court should disregard these irrelevant arguments.

Plaintiff further asserts that his allegations of actual malice overcome the fair report privilege. Plaintiff is flat wrong on this. The Illinois Supreme Court has held that "the fair report privilege overcomes allegations of either common law or actual malice." Solaia Tech., LLC v. Specialty Publ'g Co., 221 Ill. 2d 558, 587, 852 N.E.2d 825, 843 (Ill. 2006); see also Restatement (2d) of Torts, § 611 cmt. a ("[T]he privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false."). Moreover, a "flippant" or "'smart alecky' style of writing . . . to create reader interest" does not cause a publication to lose the fair report privilege. Sellers v. Time, Inc., 299 F. Supp. 582, 585 (E.D. Pa. 1969), aff'd 423 F.2d 887 (3d Cir. 1970) ("Even such a respected periodical as United States Law Week, sometimes adds 'color' to enliven an otherwise routine and dull account of a legal decision.").

Next, Plaintiff asserts that the fair report privilege does not apply to claims of defamation per se. (See Response at 4-5.) Plaintiff is, once again, simply incorrect, and none of the cases that he cites support his argument.

Finally, Plaintiff repeats his lengthy list of grievances about what he feels was

improperly omitted from Gawker Defendants' eleven-sentence post about Mr. Huon's lawsuit against the ATL defendants. Here, as in his various complaints, he lists many things he wishes were covered by the press, but fails to cite fabricated evidence or even specific inaccuracies.

Bizarrely, Plaintiff complains on page 12 of his response that "Defendants omitted that Mr. Huon was acquitted" while noting twice on page 11 that he is suing over a headline, the first word of which describes him as "acquitted."

Plaintiff actually asserts that in order to avoid defamatory content in the Gawker Defendants' article about the lawsuit filed by Mr. Huon, the Gawker Defendants were obligated to include information about a legal ruling on a motion concerning his consent defense and to include, in Plaintiff's words, that "the complaining witness cyberstalked Mr. Huon and that the cyberstalking charges languished for seven months and were dismissed on the day the former Madison County State's Attorney was sworn in as a Judge." Quite simply, there is nothing in the law to support this notion. And while we'd all love to be in charge of everything written about us, contrary to his belief, "The fair report privilege" is not the "What Mr. Huon feels is fair privilege" and a news article about his litigiousness does not become defamatory just because he doesn't like it.

### III. PLAINTIFF MISUNDERSTANDS THE BLANKET PROTECTION OF SECTION 230 OF THE CDA

Almost all of Plaintiff's claims against the Gawker Defendants (other than the headline noting Mr. Huon's acquittal) rest on comments posted by John Doe Defendants on Gawker's website. In response to the clear immunity under the CDA asserted in Defendants' motion to dismiss, Mr. Huon cites law inapposite to the facts of the case, ignores controlling caselaw, opting instead to nakedly allege that comment moderation

consitutes content generation. It doesn't. As <u>Zeran v. America Online, Inc.</u>, 129 F.3d 327, 330 (4th Cir. 1997), <u>cert. denied</u>, 524 U.S. 937 (1998) makes clear: "[l]awsuits seeking to hold a service liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred" under the CDA. And as fall the comments, so falls the majority of Plaintiff's suit.

IV.  **PLAINTIFF INVENTS A NONEXISTANT CAUSE OF ACTION IN INVOKING "CYBERSTALKING"**

Plaintiff continues to assert the irrational belief that he can bring a claim for cyberstalking in a civil lawsuit. According to the Illinois statute he himself cites, cyberstalking is solely criminal, and there is no associated civil right of action. 720 ILCS 5/12-7.5(b). As Plaintiff raises it, counsel notes that a Rule 11 "Safe Harbor" letter will be served on Plaintiff, contemporaneous with this reply.

V.  **PLAINTIFF'S FACTUAL ALLEGATIONS FOIL HIS CIVIL CONSPIRACY THEORY AS A MATTER OF LAW**

For the first time in his response, Plaintiff elaborates on the specifcs of his conspiracy theory. Having done so, it is even more manifest that Plaintiff's conspiracy claim fails as a matter of law. In addition to the reasons stated in Defendants' Memorandum, Plaintiff's claim fails because he alleges a conspiracy only between individuals who are agents of the same principal, which is not valid under Illinois law. <u>See</u> <u>Buckner v. Atlantic Plant Maintenance, Inc.</u>, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (Ill. 1998) ("[B]ecause the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent."; <u>Van Winkle v. Owens-Corning Fiberglass</u>, 291 Ill. App. 3d 165, 173, 683 N.E.2d 985, 991 (Ill. 4th Dist.

1997) ("[A] civil conspiracy cannot exist between a corporation's own officers or employees."). (See Complaint ¶¶ 14-15 alleging agent/principal/employee relationships among Gawker Defendants). There is a charming irony in Plaintiff's reliance on the fact that "Defendants even refer to themselves collectively as Gawker defendants" (See Plaintiff's Response at 15), when it's that very argument that proves fatal to his claim.

## VI. PLAINTIFF'S SELF-PROCLAIMED VICTIM STATUS DOES NOTHING TO UNDERMINE THE DOCTRINE OF INCREMENTAL HARM

As much as anything in his reply, Plaintiff's response to the Gawker Defendants' invocation of the incremental harm doctrine demonstrates the Alice-in-Wonderland quality of his world. On page 15 of Plaintiff's response, Plaintiff bemoans the fact that:

> "Defendant argues "The court can take judicial notice of the fact that Plaintiff was subsequently arrested and criminally charged with posing as "Nick Kew" a casting agent with the William Morris agency…" From what source? Mr. Huon has never seen the police report. Where did the Defendants get this information-- from stalking Mr. Huon?" (See Plaintiff's Response at 16).

No. The Gawker Defendants are not stalking Mr. Huon. As he well knows, the information concerning those charges came from an official court document—precisely the kind of document judicial notice was designed for. That document is the criminal complaint filed against him (a copy of which is attached hereto as Exhibit A). It is no great surprise that Plaintiff dislikes any recitation of his encounters with the criminal justice system, but the fact that he has a peculiar view of himself—that of the perennial victim—does nothing to undermine the reality-based understanding of his reputation as long since besmirched by his arrests and constant litigiousness.

VII. **PLAINTIFF'S FANCIFUL SPECULATIONS DO NOT CONSTITUTE A LEGAL THEORY OF PERSONAL LIABILITY**

Citing The Drink Group, Inc. v. Gulfstream Communications, Inc., et al., 7 F. Supp. 2d 1009 (N.D. Ill. 1998), Plaintiff engages in a fanciful attempt to pierce the corporate veil by alleging, without any support whatsoever, that Nick Denton and Gaby Darbyshire are "alter egos" of Gawker Media. Plaintiff might have been wise to study the case he cites. In Drink Group, the court grants a motion to dismiss in favor of defendants finding: "Plaintiff's averments fall woefully short of the "special showing" requirement in Dangler v. Imperial Mach. Co., 11 F.2d 945, 947 (7th Cir. 1926)," Drink Group at 1011, which "[d]espite the passage of years... is still the law of this Circuit and cited approvingly by subsequent courts." Id. at 1010. "[C]onclusory statements, standing alone, run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts." Id. at 1011.

There as here, there is no evidence or allegation beyond Plaintiff's fanciful imaginings. Indeed, a look at the other cases Plaintiff cites bolsters the notion that such an attempt must be undergirded by more than the childish desire to sue someone personally. Both *Fontana* and *Kohler*, which Plaintiff cites, involve genuinely sham companies that are held by 2-3 sole shareholders seeking to hide from liability by using companies marred by insolvency, commingling of funds, and in general corporate disrepair. Gawker Media, even by Plaintiff's own assertion is no such company. As plaintiff has raised the issue of sanctions, Defendants note again that a "safe harbor" letter will be served on Plaintiff, contemporaneous with this reply.

VIII.   **PLAINTIFF MISSTATES THE REPUBLICATION RULE**

Plaintiff's assertion that the republication rule applies to internet postings, is, once again simply incorrect. In <u>Firth v. State of New York</u>, 706 N.Y.S.2d 835 (N.Y. Ct. Cl. 2000), <u>aff'd</u>, 731 N.Y.S.2d 244 (N.Y. App. Div. 2001), the court held:

> This court sees no rational basis upon which to distinguish publication of a book or report through traditional printed media and publication through electronic means by making a copy of the text of the Report available via the Internet. While the act of making the document available constitutes a publication, in the absence of some alteration or change in form its continued availability on the Internet does not constitute a republication…" <u>Id.</u> at 843.

Under the circumstances, the continued availability of the Post on Defendants' website "does not constitute a republication," as Plaintiff wants to believe and urges on the court.

IX.   **PLAINTIFF ESSENTIALLY CONCEDES HIS FAILURE TO ALLEGE SPECIAL DAMAGES**

In their motion to dismiss, the Gawker Defendants pointed out that Plaintiff failed to allege special damages in support of his defamation *per quod* claim (<u>See</u> Memorandum at 20-22.) In his response Plaintiff suggests that perhaps he should be given leave to amend again—something that after two amended complaints, and over a hundred docket entries, defendants vigorously oppose.

X.   **PLAINTIFF'S PRESENTS NO LEGAL ARGUMENT AS TO THE VIABILITY OF HIS EMOTIONAL DISTRESS CLAIM**

Defendants have argued that Plaintiff's IIED claim fails because, among other reasons, the First Amendment protections that prevent his defamation claim apply equally to a claim for IIED.  Indeed, The Supreme Court has recently said as much in <u>Snyder v. Phelps</u>, 131 S. Ct. 1207, 1215 (2011) ("The Free Speech Clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of

emotional distress.") (citing Hustler, 485 U.S. 46, 50-51 (1998)). Plaintiff, in his rejoinder to this defense, does not present a legal argument supporting the sufficiency of his pleadings, but rather uses it as yet another opportunity to list his grievances and complain of his alleged persecution. Such complaints absent a legal basis (and he provides not a single case) are unavailing.

### XI. THE COURT CAN AND SHOULD DECIDE THIS CASE AT THIS STAGE

Toward the end of his response, Plaintiff incorrectly asserts that the court cannot decide this matter at this stage. He does so by discussing Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1228 (7th Cir.1993), a case in which the 7th Circuit invoked the incremental harm doctrine and upheld a summary judgment dismissal explaining:

> The rule of substantial truth is based on a recognition that falsehoods which do no incremental damage to the plaintiff's reputation do not injure the only interest that the law of defamation protects. A news report that contains a false statement is actionable "only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." Herron v. King Broadcasting Co., supra, 776 P.2d at 102. …Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable. The rule making substantial truth a complete defense and the constitutional limitations on defamation suits coincide.

This court can indeed take judicial notice of the official court documents and transcripts attached to the Gawker and ATL Defendants' motions to dismiss and subsequent responses. Thus, unlike the other cases Plaintiff cites in which substantial and unresolved questions of fact remained prior to discovery, here, everything relevant to the determination of substantial truth, opinion and incremental harm are entirely laid out in the record before the court. Nothing more need be plead or discovered. Gawker Defendants' actions in publishing a truthful eleven sentence item concerning plaintiff's lawsuit against the ATL defendant's are not only true and thus immunized, not only

protected opinion and thus protected, not only squarely within the bounds of the fair report privilege and thus immunized, but at the end of the day, viewed in light of this Plaintiff's various arrests, trials and tribulations, are incapable of any incremental damage to Plaintiff's reputation. This court both can and should dispense with Plaintiff's claims.

### XII. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

As the instant litigation amply demonstrates, there are few combinations more dangerous than a law license and a vendetta. Plaintiff, aggrieved by his arrest and prosecution for rape, has gone about suing not only those involved in his prosecution, but also those who have written about it. This behavior follows a pattern. When he was terminated from his law firm, he sued the partners and the firm for defamation for a performance evaluation he did not like. The case was dismissed. Here, after filing suit against the county, cops and prosecutors, he sued the ATL Defendants for defamation for reporting on his rape trial and then sued the Gawker Defendants for defamation (along with several hundred John Doe Defendants) for reporting on the lawsuit he filed against ATL. In short, Mr. Huon uses the law of defamation offensively--to silence those who report things about him he doesn't like. Rather than meritorious, Mr. Huon's litigation strategy is tactical, vexatious, and chilling—and designed as such.[4] The pattern demonstrates that his aim is to make writing about his actions as costly as possible, and his conduct in this litigation supports that notion. Thus far, he has filed two amended complaints, and a plethora of motions. Even now he intimates he may wish to amend

---

[4] This strategy also explains why, Plaintiff, who has touted his success as an attorney conflates important distinctions, mischaracterizes Defendants' assertions, cites cases virtually unrelated to the facts at bar, and prefers bizarre (and inaccurate) name calling to any serious legal rejoinder to the merits of Gawker Defendants' motion to dismiss.

further.[5] But as the forgoing memo and the chart attached to the Gawker Defendants' Motion as Exhibit F makes abundantly clear, the Gawker Defendants eleven sentence item concerning Mr. Huon's lawsuit was in no way defamatory, nor was it actionable. It is time for Mr. Huon's campaign to end. This court can and should dismiss each and every one of Plaintiff's claims with prejudice, and that is precisely the relief the Gawker Defendants now seek.

WHEREFORE, the Gawker Defendants respectfully request the Court dismiss all claims against them in Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice, and provide such further relief as is just.

Dated: New York, New York  
December 29, 2011

Respectfully Submitted,

GAWKER MEDIA A/K/A
GAWKER.COM, JEZEBEL.COM,
NICK DENTON, IRIN CARMON
& GABY DARBYSHIRE,

By: ____/S/   David Feige_____
One of their attorneys

David Feige  
Oren S. Giskan  
GISKAN SOLOTAROFF ANDERSON
& STEWART LLP  
11 Broadway, Suite 2150  
New York, NY 10004  
T: 212.847-8315  
F:  646.520.3235  
David@DavidFeige.com

---

[5] Plaintiff suggested in his response (which was over-long and filed without leave of court) that he might yet again request leave to amend the Complaint to allege special damages in support of a claim of defamation per quod. (See Docket No. 79 at 15.) Plaintiff has not actually made any such request, and the Gawker Defendants vigorously oppose any further amendment.

## CERTIFICATE OF SERVICE

Under penalties of law, I attest the following documents or items have been or are being electronically served on all counsel of record for all parties on _____

Dated: New York, New York　　　　　　　　　Respectfully Submitted,
December 29, 2011

　　　　　　　　　　　　　　　　　　　　　By:　____/S/　David Feige_____
　　　　　　　　　　　　　　　　　　　　　　　　　David Feige

David Feige
Oren S. Giskan
GISKAN SOLOTAROFF ANDERSON
& STEWART LLP
11 Broadway, Suite 2150
New York, NY 10004
T: 212.847-8315
F: 646.520.3235
David@DavidFeige.com